**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| PROPERTY OWNERS WITHSTANDING ETJ RETRACTIONS; AND THE SCHOENSTATT MOVEMENT OF AUSTIN<br>    *Plaintiff,*<br><br>v.<br><br>CITY OF AUSTIN; T.C. BROADNAX, in his official capacity as City Manager; and KEITH MARS, in his official capacity as Director of Development Services Department,<br>    *Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:26-cv-1518 |

## <u>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>

Luke McHenry
Assistant City Attorney
State Bar No. 24057993
Luke.mchenry@austintexas.gov
Hannah M. Vahl
Assistant City Attorney
State Bar No. 24082377
hannah.vahl@austintexas.gov
Austin City Attorney's Office
Telephone (512) 974-2401
Facsimile: (512) 974-1311

**ATTORNEY FOR DEFENDANTS**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 1

    A.   ETJ Release Legislation and Statutory Exceptions to Eligibility for Release ........... 1

    B.   Subchapter D's Petition Process & Mandatory Directions to Municipalities ............. 2

    C.   The Petition Process in Austin ................................................................................. 3

    D.   Bee Caves Billboard Construction and Resident Complaints ................................... 4

    E.   The Armory is a Military Base & City's Prior Actions Void. ................................... 5

    F.   Enforcement Actions Following Issuance of Correction Letters ............................... 5

    G.   Regulations in the ETJ ............................................................................................. 6

III.   LEGAL STANDARD ......................................................................................... 6

IV.   ARGUMENT ....................................................................................................... 7

    A.   POWER has not shown it has standing sufficient to obtain a preliminary injunction. 7

    B.   Plaintiffs have no cognizable property interest and are unlikely to succeed on the merits ................................................................................................................... 10

        i.   Statutory Text Controls and There is No Ambiguity in the Military Base Definition ................................................................................................................. 11

        ii.   Plaintiffs' properties are ineligible for release. ..................................................... 14

        iii.   The Legislature did not provide a right to appeal. ................................................. 15

        iv.   The notification letters were void, not voidable, and the City could correct them... 16

        v.   Plaintiffs' *Ultra-Vires* Theory Fails ..................................................................... 17

    C.   Plaintiffs cannot show likelihood of success on the merits because this Court should abstain under *Pullman* or *Buford.* ........................................................................ 18

    D.   The balance of equities favors the City in service of the public interest .................. 20

## I.    INTRODUCTION

S.B. 2038 bars properties within a municipality's extraterritorial jurisdiction ("ETJ") from release if they are within five miles of an active military base. The Bee Caves Armory ("Armory") is a military base as statutorily defined by the Legislature.  Plaintiffs' properties lie within five miles of the Armory and are therefore ineligible to petition for release under the statute's plain text. Despite being ineligible, property owners filed release petitions beginning in 2023.  The City, as directed by the Legislature, issued notification letters when release petitions satisfied the statutory requirements set forth by the Legislature. The properties would then be released by operation of law after 45 days. The Legislature did not require, mandate, or direct any municipality to make the threshold inquiry about a property's eligibility.

In 2026 the City determined certain properties were ineligible for release and issued letters voiding the prior notifications. The properties were ineligible for release before the petitions were ever filed. Plaintiffs now ask this Court to transform an *ultra vires* administrative error into a vested right, but the statute's express terms—not policy preferences or speculation about legislative intent—control.

Plaintiffs cannot meet the requirements for preliminary relief. They lack a likelihood of success because S.B. 2038 squarely forecloses release for properties near active military bases; they have no protected property interest in a benefit the statute denies; and the City acted lawfully in issuing correction letters. Their remedy, if any, lies with the Legislature, not a federal court.

## II.    FACTUAL BACKGROUND

### A.  ETJ Release Legislation and Statutory Exceptions to Eligibility for Release

Texas Senate Bill 2038, enacted during the 88th Texas Legislature (2023), added Subchapters D and E to Local Government Code Chapter 42.  Subchapter D (Sections §§ 42.101–

1

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

.105) established a petition-based mechanism for landowners and residents to seek release of land from a municipality's ETJ.

A landowner's right to petition for release from an ETJ is not absolute. Subchapter D does not apply to certain areas, including an area located within five miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted (hereafter "Military Base Exclusion") *Id.*at Section § 42.101. [1] Section 43.0117(a) provides, "[i]n this section, 'military base' means a presently functioning federally owned or operated military installation or facility." *Id.* at § 43.0117(a) (hereafter "Military Base Definition"). The remaining sections of Subchapter D do not refer to the Military Base Exclusion or the Military Base Definition. *Id.* at § 42.102-.105. *See* McHenry Declaration ¶ 3, Ex. A ("Subchapter D and Section 43.0117").

Subchapter D's applicability exclusions operate as threshold scope limits, not as municipal due-diligence mandates. Nothing in Subchapter D assigns a municipality any duty to investigate, certify, or verify the applicability of exemptions before acting on a release petition. *Id*.

**B. Subchapter D's Petition Process & Mandatory Directions to Municipalities**

Sections 42.102 - 42.105 of Subchapter D establish the mechanics for the petition process and mandate what a municipality shall do upon receipt of a petition *Id.* Sections 42.102 addresses the authority to file a petition and Section 42.104 establishes the petition requirements. *Id.* Section 42.105 establishes what a municipality must do once a petition is filed, and no discretionary authority on the part of the City is provided for. *Id.* A petition requesting removal "*shall be* verified

---

[1] When first introduced, Senate Bill 2038 did not include the Military Base Exclusion language. In April 2023, the Texas Senate amended SB 2038 to include the Military Base Exclusion in addition to other Subchapter D exclusions. No subsequent amendments addressed the Military Base Exclusion or Military Base Definition. No debate relating to the need to adopt federal definitions or any discussion about BRAC appear in Senate Bill 2038's legislative history.

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

by the municipal secretary or other person responsible for verifying signatures." *Id*. § 42.105(a)(emphasis added). A municipality "*shall notify* the residents and landowners of the area…of the results of the petition." *Id*. § 42.105(b)(emphasis added). If the petition contains the required number of valid signatures, "the municipality *shall immediately* release the area…". *Id*. § 42.105(c)(emphasis added). If the city does not act to release the land (either forty-five days after the petition is received or by the next meeting of the governing body occurring thirty days from receiving the petition), "the area is released by operation of law." *Id*. § 42.105(d).

Simply put, Subchapter D instructs a municipality on what *must* be done when a petition is submitted, when it *must* be done, and what will occur if a municipality fails to act. Subchapter D does not provide an administrative process allowing a petitioner to appeal.

### C. The Petition Process in Austin

Subchapter D took effect on September 1, 2023, and the City thereafter began processing ETJ release petitions under Texas Local Government Code § 42.105. *See* Erica Brady Declaration ¶5. The following background outlines how the City Clerk's Office, in conjunction with the City's Planning Group, processed Release Petitions.

- For each petition, the City Clerk verified the petition's signatures as required by § 42.105(a). *Id.* at ¶ 6.

- The City also reviewed petitions to confirm each satisfied Section 42.104(d)'s requirements, specifically a map of the land to be released must be included, along with a description of the boundaries of the land, either by metes and bounds or lot and block number. *See* Castles Decl. ¶ 7.

- The City notified the petitioners of the results for each Release Petition. *See* Brady Decl. ¶ 7.

- Where a petition was deficient—for example, because it failed to include a map or adequately describe the land's boundaries—the City promptly notified the petitioner and identified the deficiency. *See* Brady Decl. ¶ 7 & Exhibit A ("Deficiency Letter Template").

3

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

- When a petition satisfied the respective requirements of Sections 42.102 and 42.104, the City notified the petitioner that the petition met the applicable statutory requirements, as required by Section 42.105(b), and that the area described in the petition would be formally released from the City's ETJ under Section42.105(d), i.e., by operation of law after 45 days. *See* Brady Decl. ¶ 7, Exhibit B ("Notification Letter Template").

At no point did the City or the City Clerk's Office advise any petitioner or landowner that any property was being released from the City's ETJ pursuant to Section 42.023 or any other authority. *See* Brady Decl. ¶ 8

### D. Bee Caves Billboard Construction and Resident Complaints

In July 2025, Acme Partnership/Media Choice LLC[2] began constructing a prohibited off-premises billboard at 106 River Hills Road near Bee Caves Road, which is within the City's ETJ. *See* Castles Decl. ¶ 12. Billboards are not allowed in the City's ETJ. *Id.* At the time construction began, the property owner had not filed a valid release petition. *See* John McEwan Declaration ¶ 6.

Nearby residents ("Impacted Neighbors") filed complaints with the City, citing safety concerns about the billboard's construction and the property's eligibility for release, given its proximity to the Armory. *See* McEwan Decl. ¶ 5 In January 2026, John McEwan, one of the Impacted Neighbors, emailed the Texas Military Departments' Public Affairs Office ("TMDPAO") seeking confirmation that the Armory was an active military training site. *See* McEwan Decl. ¶¶ 8-9. On January 12, 2026, the TMDPAO responded to McEwan's inquiry as follows:

> Based on our current tracking, the Bee Caves Armory remains an active Texas Army National Guard training site. Units under the 71st Troop Command,

---

[2] Curtis Ford is the Founder and CEO of Media Choice. Mr. Ford is also the Chair of the Board of Directors of POWER. *See,* Unsworn Declaration of Curtis Ford ¶3. Mr. Ford, Haylee Ford, and Craig Jenkins—all employees of Media Choice (https://mediachoice.com/team/)-- are the sole directors of POWER. *See*, McHenry Decl. ¶ 4 & Exhibit B (POWER's Certificate of Formation filed with the Texas Secretary of State).

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

including subordinate elements such as the 71st Theater Information Operations Group (TIOG) and the 100th Mobile Public Affairs Detachment (MPAD), are currently utilizing this and associated facilities for scheduled drills and training activities during the 2025–2026 period.

McEwan Decl. ¶¶ 8-9 & Exhibit A. Mr. McEwan shared this information with the City. *Id.* ¶ 10.[3]

### E. The Armory is a Military Base & City's Prior Actions Void.

Upon receiving the information from Mr. McEwan, the City determined the Armory qualifies as a "military base" under Subchapter D.  The City determined the Armory was a federally owned installation with active training occurring at the Armory's facilities—meeting the statutory Military Base Definition.  *See* McHenry Decl. at ¶ 5 & Ex. C ("TCAD Information").

The City immediately commenced a review of the previously submitted release petitions and identified properties within five miles of the Armory that were ineligible for ETJ release under Subchapter D. *See* Castles Decl. at ¶10. The City determined that several Notification Letters were void because the areas identified in the petitions were ineligible for release under Chapter D. *Id.* On March 13, 2026, the City sent correction letters notifying each ineligible property owner that the Notification Letters were "void and of no force or effect." *See* Brady Decl. at ¶ 9. & Ex. C ("Correction Letters") The Correction Letters advised the property was within five miles of the Armory and that under state law the property was not eligible for release from the City's ETJ. *Id.*

### F. Enforcement Actions Following Issuance of Correction Letters

Since issuing the Correction Letters only the Waldrop Trust (which owns land at 106 River Trails Dr.) has been the subject of any regulatory enforcement by the City. *See* McHenry Decl. ¶

---

[3] In addition to the TMDPAO, the Texas Military Department's Government Affairs Office ("GAO") advised (1) the Armory's land and facilities are federally owned, and (2) uniformed members of the Texas National Guard actively report to the Armory for drills.  Further, "this appears to confirm that the facility qualifies as a "military base," as defined in Section 43.0117 of the Texas Local Government Code. *See* McHenry Decl. ¶ 6, Ex. D ("Texas Military Department's GAO Correspondence").

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

8; Gervasi Decl., Ex. D. The enforcement actions relate to Acme Partnership/Media Choice LLC's construction of a billboard along Bee Caves Road—the same billboard the Impacted Neighbors raised concerns about. *Id.* The billboard related enforcement actions predate Waldrop Trust's petition for release from the City's ETJ and the City's issuance of the Correction Letters. *See* McHenry Decl. ¶ 8.  No other properties have received any violation notices. *Id.*

### G.  Regulations in the ETJ

Property Owners in the City's ETJ are subject to off-premise sign regulations, water quality regulations, and subdivision regulations.[4] *See,* McHenry Decl. ¶ 7, Ex. E ("ETJ Regulations Chart").[5] The City's watershed regulations apply in the City's ETJ and include the Save Our Springs (SOS) Ordinance, which protects Edwards Aquifer, reduces pollutants in its waterways, and reduces erosion. *See* Lilly Decl. ¶¶ 3, 6. The watershed regulations also protect sensitive environmental areas such as Barton Springs, as well as endangered species. *Id.* Unlike other provisions in the City's environmental code, the SOS Ordinance can only be modified with a super majority vote of the City Council.  *Id* at ¶ 4.  Some of the properties that were ineligible for release from the City's ETJ are in watersheds contributing to Barton Springs and therefore subject to the SOS Ordinance. *Id* at ¶ 6.

### III.    LEGAL STANDARD

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Fund Texas Choice v. Paxton,* 658 F.Supp.3d 377, 393-394 (W.D. Tex. 2023);  *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

---

[4] ETJ properties within an airport hazard are also subject to Airport Hazard regulations but are inapplicable here.
[5] The full title of the ETJ Regulations Chart is Home Rule City and Residents Rights and Responsibilities in Full and Limited Purpose Annexation Areas.

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

## IV.    ARGUMENT

### A.  POWER has not shown it has standing sufficient to obtain a preliminary injunction.

The plaintiff bears the burden of establishing standing and must support each element of standing with the manner and degree of evidence required at each successive stage of the litigation. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). "At the preliminary injunction stage . . . the plaintiff must make a 'clear showing' that [the plaintiff] is 'likely' to establish each element of standing.'" *Id.* (citing *Winter* 555 U.S. at 22 (2008)). Standing requires a plaintiff show that it "has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Associational standing requires an association to show: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n. of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Ordinarily, that first element is met by identifying a member of the organization who has standing.

POWER, however, has not identified a single such member by name.

7

While there are circumstances in which declining to name names may be appropriate, this is not one of them. *See e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (state could not require NAACP to divulge its members when doing so would mean they would risk "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility," thereby impairing their right to associate).  There is no allegation that naming members of POWER would cause them to risk anything. And the relief POWER seeks—that the City be enjoined from exerting its regulatory powers over properties within its ETJ that are ineligible under Subchapter D—depends on identification of its members. A court cannot grant preliminary relief—or any relief—to a party that is not before it. *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) ("As a matter of law, the injunction's protection extends only to the suing plaintiff"). POWER asks for an injunction enjoining the City from enforcing its regulatory powers over properties within the City's ETJ that are statutorily ineligible for release; without clarity on which property owners are part of POWER, the Court cannot award that relief because it risks an impermissible injunction protecting a property owner that is not a party to this suit (or one who doesn't want to be part of this suit).

Rather than name its members, POWER appears to proceed on a theory that *all* its members have standing and it therefore does not have to individually name any one of them. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009) (noting that it has "required plaintiff-organizations to make specific allegations establishing that *at least one identified member had suffered or would suffer harm*" and that "this requirement of naming the affected members has never been dispensed with in light of statistical probabilities, *but only where all the members of the organization are affected by the challenged activity*.") (citing *NAACP*) (emphasis added). But there are two problems with that approach. One is that the ability to proceed completely anonymously should require some evidence, like in *NAACP*, of harm in being named, and none is presented. The second

8

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

is that POWER has not shown that all its members are injured and therefore it need not specifically name any one of them. The only evidence of injury—POWER's board chair's assertions about individualized harm to POWER members—are statements based on apparent hearsay and without any showing of personal knowledge. Additionally, the *only* enforcement action that Plaintiffs present to support its imminent risk of 'enforcement action' is a Notice of Violation issued to Waldrop Trust for Acme Partnership/Media Choice's construction of an off-premises billboard— an ongoing enforcement action that predates Waldrop Trust's Release Petition or the Correction Letters. *See* McHenry Decl. ¶ 8. POWER does not just seek to keep all its members under wraps but seeks to avoid even a declaration from an individual member, redacted or otherwise anonymized.

POWER cannot identify even a single member by name who claims to have been harmed by the City's acts. *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.) ("[T]he Supreme Court has said that an affidavit provided by an association to establish standing is insufficient unless it names an injured individual.") (citing *Summers*, 555 U.S. at 498)); *see also Do No Harm v. Pfizer Inc.*, 96 F.4th 106 (2d Cir. 2024) (holding plaintiff failed to show standing to obtain preliminary injunction where it did not identify a single member by name), *opinion vacated and superseded on reh'g*, 126 F.4th 109 (2d Cir. 2025) (holding organization's failure to establish standing entitling it to a preliminary injunction, which was not challenged on appeal, did not require dismissal of its claims and remand was warranted to determine whether organization sufficiently pled standing to survive a motion to dismiss).[6]

---

[6] The Fifth Circuit has held that an organization need not identify a specific harmed member to withstand a motion to dismiss based on lack of standing. *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 497 n.5 (5th Cir. 2024) ("*Summers* only requires that the plaintiff allege that there is a specific injured member… Alleging that a specific member exists does not require naming that member"). But it has not specifically held that identification of a specific member (or a showing that all an organizations' members have standing) is not required at the preliminary injunction stage—though its statements could be read to support that broader reading. *Cf. Texas v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 737 F. Supp. 3d 426, 438–39 (N.D. Tex. 2024) (holding organization can have

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

For similar reasons, POWER has not shown that individual member participation is required, which is the third element of the organizational standing requirement. This prong "is best seen as focusing on ... matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996). But it can still doom an organizational plaintiff's standing. *APFA Inc. v. UATP Mgmt., LLC*, 537 F. Supp. 3d 897, 909 (N.D. Tex. 2021) (granting motion to dismiss where court concluded that franchisee association "is simply not in the best position to present the subtleties of the franchisees' individualized contract and tort claims" and did not show individual member participation was not required). A property owner in the middle of developing property under different rules stands in different shoes than a property owner who was only briefly out of the City's jurisdiction and nothing became of it. While the Fifth Circuit allows suits to proceed using evidence from representative injured members, *see Association of American Physicians*, 627 F.3d at 552, here whether temporary relief is warranted— and what that relief ought to consist of—should depend on individualized equitable determinations regarding the specific nature of harm to that specific property owner. The Court is unable to assess irreparable harm, and balance equities, in the absence of any specific evidence of harm to a specific property owner.

## B. Plaintiffs have no cognizable property interest and are unlikely to succeed on the merits.

Absent a cognizable property interest, Plaintiffs cannot establish a likelihood of success on the merits of its procedural due process claim. A preliminary injunction issues only if the movant

---

associational standing to obtain a preliminary injunction by identifying an individual member anonymously or pseudonymously).

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

satisfies all four factors. To prevail on due process, plaintiffs must show a protected interest and inadequate procedures; failure on the first element is dispositive. *Mathews* balancing is unnecessary without a cognizable interest. Plaintiffs' theory collapses at the threshold.

### i.    Statutory Text Controls and There is No Ambiguity in the Military Base Definition

The Armory sits on federally owned land used for military activities; therefore, it is "federally owned" and "presently functioning," and the inquiry ends with the plain text.  Plaintiffs seek to create ambiguity where none exists, ignore the Legislature's choice of statutory language, and compel the City to act in a manner inconsistent with the Legislature's mandate.  No provisions of Subchapter D, or Section 43.0117 reference federal regulations, the Department of Defense, or the Base Realignment and Closure Act ("BRAC). Subchapter D sets forth clear mandatory actions a municipality "must" or "shall" undertake  and provides no authority or discretion for a municipality to release property that is not eligible for release.

The provisions are complete on their face and must be applied as written. Texas law requires courts to read statutory words in context and to construe terms that have an express legislative definition according to that definition. *See* Tex. Gov't Code § 311.011(a)–(b).  When the text of a statute is clear and unambiguous, the Supreme Court of Texas has repeatedly held that courts "do not resort to extrinsic aids," and may not add words not chosen by the Legislature. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (2008) ("In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute."); *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 78 (2017) ("If a case can be decided according to the statute itself, it must be decided according to the statute itself. This is a bedrock principle."); *Texas Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 135 (2018)

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

(rejecting request to refer to extrinsic aids). Where the Legislature supplies a definition, that definition "displaces the term's historical or ordinary meaning," and courts are "bound to follow" it—without resort to external sources. *See Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 847 (2024); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

The Texas Legislature also adopted the Texas Code Construction Act[7] whose rules "are meant to describe and clarify common situations in order to guide the preparation and construction of codes." Tex. Gov't Code Ann. § 311.003. The Act governs how courts approach statutory interpretation and provides, "Words and phrases shall be read in context and construed according to the rules of grammar and common usage" *Id.* at §311.11(a). The Act also includes clear definitions on how terms are to be interpreted: the term 'May' creates discretionary authority or grants permission or a power, whereas 'Shall' imposes a duty." *Id.* at §311.016(1)-(2). The Act also sets forth statutory construction aids that a court *may* (but not must) consider "whether or not the statute is considered ambiguous on its face." *Id.* at §311.023.[8]

Applying these settled rules, the Plaintiffs' invitation to consult federal regulations defining "military installation" or BRAC materials must be rejected. Importing those federal sources would impermissibly add words the Legislature omitted and substitute an external definition for the one chosen by the Legislature. Texas courts presume every included word has purpose and every excluded word was purposefully omitted, reinforcing that the absence of any federal cross-reference is dispositive. *See TGS-NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex. 2011).

---

[7] The Code Construction Act applies to the Local Government Code. Tex. Loc. Gov't. Code Ann. § 1.002.
[8] The identified statutory aids that a court *may* consider among other matters include the object to be attained, the circumstances under which the statute was enacted, legislative history, common law or statutory provision, consequences of a particular construction, administrative construction of the statute, and the title (caption), preamble, and emergency provision.

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

The Armory meets all three elements of the Military Base Definition:

First, the Armory remains an active Texas Army National Guard Training Site. *See* McHenry Decl. ¶¶ 5-6 & Ex. C & D; McEwan Decl. ¶¶ 8-9 & Exhibit A.

Second, it is federally owned or operated. There is no dispute that the Armory is federally owned. *See* McHenry Decl. ¶¶ 5-6 & Ex. C. The Legislature's use of the disjunctive word "or" in the condition "federally owned or operated military installation or facility" is significant. *See Spradlin v. Jim Walter Homes, Inc.,* 34 S.W.3d 578, 581 (Tex.2000) ("This reading is supported by the use of the disjunctive conjunction 'or' between the two phrases, which signifies a separation between two distinct ideas."); *See also City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 642 (Tex. 2013)( because statute used "or," the Court held that a property owner need not obtain approval for *both* types of development to be protected from a moratorium—approval of *either* was sufficient); *Texas v. United States Environmental Protection Agency,* 156 F.4th 523, 546 (5th Cir. 2025) (that canons of statutory construction require that terms connected by a disjunctive be given separate meanings).

Finally, the Armory is a military installation or facility. *See* McEwan Decl. ¶¶ 8-9 & Exhibit A

Based on principles of statutory construction alone, Plaintiffs are unlikely to succeed on the merits of their Complaint.  The Armory meets the Military Base definition and properties within five miles of the Armory were not eligible for release from the ETJ.

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

### ii. Plaintiffs' properties are ineligible for release.

Plaintiffs have no property interest in being released from the City's ETJ because their property is not eligible for release.[9] Because Subchapter D never applied, no valid releases ever occurred and the Notification Letters were void.

A protected property interest requires a legitimate claim of entitlement, not a unilateral expectation. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Property interests "are not created by the Constitution" but "are created and their dimensions are defined by ... an independent source such as state law." *Branch v. Harris Cnty. Sheriff's Off.*, 2025 WL 636313, at *2 (5th Cir. 2025)(quoting *Roth,* 408 at 577). While Subchapter D creates a framework for a property owners to have their land released from a municipality's ETJ, the Legislature adopted exceptions to eligibility. Where state law conditions eligibility, there is no due-process property interest absent satisfaction of those conditions. *See Harrison v. Young*, 48 F.4th 331, 341 (5th Cir. 2022) (preliminary injunction not warranted on due process claim where plaintiff not eligible); *Cardoni v. Prosperity Bank*, 805 F.3d 573(noting importance of the "likelihood of success" factor in holding that preliminary injunction was not warranted).

The Legislature deemed areas within five miles of a military base ineligible for release. While Plaintiffs disagree with the City's determination and contend the Armory does not qualify as military base, there is no dispute that Plaintiffs' properties are within five miles of the Armory. Notably, the Fifth Circuit rejected similar due process claims premised on a landowner's desire to have an annexation petition approved. *Mahone v. Addicks Utility Dist. of Harris County*, 826 F.2d

---

[9] Of course, the only property that has been identified is Plaintiff Schoenstatt Movement of Austin's property. POWER has not identified any properties. Presumably there are some property owners that received Correction Letters whose interests do not align with POWER.

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

291 (5th Cir. 1988) (a landowner has no vested interest protected by due process in having his land annexed).

### iii.     The Legislature did not provide a right to appeal.

In adopting Subchapter D, the Legislature created a timeline-driven process for a property owner to petition for release from a municipality's ETJ but did not create a right to appeal a municipality's determination that a property is ineligible for release.

The Legislature knows how to create a right of appeal when it wants to. For instance, in S.B. 1844, the Legislature created a disannexation right for certain disannexation petitions and, further, provided that if the municipality failed or refused to disannex the petitioning area within sixty days, any petitioners could sue in district court and bring the case as an expedited action. *See* Acts of May 28, 2025, 89th Leg., R.S., ch. 235 (codified at Tex. Loc. Gov't Code § 43.141(b). The Legislature did not create any similar avenue for challenging the municipality's determination here.

Nor should one be implied given the intentional absence of a right to appeal here. "[T]he courts should recognize an inherent right of appeal from an administrative body created by an act silent on the question of appeal *only where the administrative action complained of violates a constitutional provision.*" *City of Amarillo v. Hancock*, 239 S.W.2d 788, 790 (Tex. 1951) (emphasis added). Plaintiffs have no property right at issue: they have no right to release from the ETJ under the clear terms of the statute. And, more broadly, there is no property right to a particular jurisdictional status. *See Hunter v. City of Pittsburg*, 207 U.S. 161, 179 (1907) (stating, in response to citizens' challenge to the consolidation of two cities, that "[a]lthough the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is

15

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it."); *cf. Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("That the annexation itself inflicts no legal injury on these plaintiffs is clear, though it allegedly has caused a decline in the value of their property. Many kinds of legislative and administrative action affect property values, but, without some diminution in the owner's rights of use, do not constitute a taking within the purview of the Fourteenth Amendment.").

### iv. The notification letters were void, not voidable, and the City could correct them.

Because Subchapter D excludes properties within five miles of a qualifying military base, the Notification Letters issued to petitioners with property within five miles of the Armory were void from the outset, not merely voidable. In Texas, municipal actions that are taken contrary to statutory limits on ETJ and annexation powers are *void ab initio*. *See Village of Creedmoor v. Frost National Bank*, 808 S.W.2d 617, 621 (Tex. App.—Austin 1991, writ denied) (municipality's attempted annexation within another city's ETJ was void and of no effect ab initio because annexing city lacked statutory authority to act); *see also City of Justin v. Town of Northlake*, 2018 WL 4259853, at *1 (Tex.App.—Texarkana 2018); *City of Houston v. Savely*, 708 S.W.2d 879, 887 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

Plaintiffs' contention that the City's March Correction Letters were an attempt to reassert jurisdiction over previously released properties is unsupported by the letters' contents and the non-discretionary duties set forth in Subchapter D. Plaintiffs' properties were never eligible for release; thus, the automatic-release mechanism of Subchapter D was inapplicable. The City cannot create a property interest where none exists.

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

The Notification Letters made several things clear. First, they acknowledged receipt of the petition for release and the date of receipt. Second, they advised that the petitions met the statutory requirements of Sections 42.102 and 42.104, as required by Section 42.105(b). Third, the Notification Letters advised the area would be released as determined by 42.105(d), i.e., by operation of law. In short, the Notification Letters merely advised that the petitions met the statutory requirements established by Subchapter D.

Plaintiffs' contention that the City released the subject properties subject to its statutory authority to do so under Section 42.023 is meritless. Equally meritless, is Plaintiffs' contention that in evaluating the petitions the City made an eligibility determination. The Legislature made explicit what the City "must" and "shall" do in reviewing a petition. The Legislature told the City what to do and the City complied. As Subchapter D makes perfectly clear, no duty exists for a municipality to make threshold eligibility decisions.

The March 2026 Correction Letters did not void a previous lawful action; they recognized no lawful release ever occurred. The March 2026 Correction Letter communicated the jurisdictional condition imposed by state law and the City's non-discretionary obligation to follow

### v.    Plaintiffs' *Ultra-Vires* Theory Fails

Plaintiffs' theory that the City "took back" something it had already relinquished rests on a false premise that the Correction Letters were *ultra vires* and unenforceable. The Correction Letters simply confirmed Subchapter D's ETJ-release mechanism is unavailable because the Legislature has excluded the properties. Because the statute withheld authority to release those parcels, the Notification Letters (advising the respective petitioners that they satisfied Sections 42.102 and 42.104 and the properties would be released by operation of law) were legally ineffective and could not divest the City of ETJ jurisdiction. The City's later letters did not "re-annex" anything; they simply recognized statutory ineligibility and corrected an administrative

17

error to align City practice with state law. This is a ministerial function with no discretion. Plaintiffs' contrary theory would invert ultra vires doctrine by using it to force the City to continue treating ineligible property as eligible—i.e., to act beyond its lawful authority.

**C. Plaintiffs cannot show likelihood of success on the merits because this Court should abstain under *Pullman* or *Buford.***

Plaintiffs cannot show likelihood of success on the merits because this case is one a federal court should abstain from deciding under *Pullman* or, alternatively, *Burford*. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *see also Sierra Club v. City of San Antonio*, 112 F.3d 789, 793 (5th Cir. 1997).

Under *Pullman*, a federal court should abstain from exercising its jurisdiction "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984) (citing *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 500 (1941)). By abstaining, federal courts "will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies.'" *Pullman*, 312 U.S. at 500. For *Pullman* abstention to be appropriate, the case must involve (1) a federal constitutional challenge to state action; and (2) an unclear issue of state law that, if resolved, would make it unnecessary for the court to rule on the federal constitutional question. *Nationwide Mut. Ins. v. Unauthorized Practice of Law Committee*, 283 F.3d 650, 653 (5th Cir. 2002). "The second factor is flexible—it is satisfied if the constitutional questions will be substantially modified or otherwise presented in a different posture." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 397 n.13 (5th Cir. 2020) (internal quotations and citations omitted).

"*Burford* abstention 'allows federal courts to avoid entanglement with state efforts to implement important policy programs.'" *ERCOT v. Just Energy Texas, L.P.*, 57 F.4th 241, 249 (5th Cir. 2023) (quoting *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 313 (5th Cir.

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

2021)). It is appropriately exercised when a case involves (1) difficult questions of state law bearing on policy problems of substantial public important whose importance transcends the result in the particular case at bar; and (2) when the exercise of federal jurisdiction over the question in the case would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Health Net, Inc. v. Wooley*, 534 F.3d 487, 496 (5th Cir. 2008).[10] In deciding whether to abstain under *Burford*, courts are to consider (1) whether the plaintiff is raising state or federal claims; (2) whether the case involves unsettled state law or detailed local facts; (3) the importance of the state's interest in the litigation; (4) the state's need for a coherent policy in the area; and (5) whether there is a special state forum for judicial review. *ERCOT*, 57 F.4ᵗʰ at 249.

Here, there is no likelihood of success on the merits because abstention under either *Pullman* or *Burford* is justified. This case requires that the court construe a new state law to reach Plaintiffs' constitutional claims which all depend on them having a property right under state law. If there is no property right because Plaintiffs have no right to release from the ETJ based on their proximity to a military base (and because they have no right to appeal the determination), their constitutional claims all fall by the wayside. Meanwhile, a coalition of cities is actively litigating the constitutionality of S.B. 2038. *See* Cause No. 15-25-0086-CV, *City of Aledo et al. v. State of Texas et al.*, in the Fifteenth Court of Appeals. The fact that this case involves a new state law that Texas courts are already being asked to construe and the federal claims depend entirely on the construction of state law suggests that this case is an appropriate one for abstention here. Abstention under *Burford* would also be warranted. Texas law on extraterritorial jurisdiction and

---

[10] It is not limited to cases challenging state administrative agency orders, though that was what was at issue in *Burford* itself. *Compare Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) *with* Wright & Miller, Fed. Practice & Procedure, § 4244 Needless Conflict with States—When Abstention Required (3d ed.) ("It seems too narrow to try to confine *Burford*. . . to [its] own facts."); *cf.*, *e.g.*, *Health Net*, 534 F.3d at 496 (*Burford* applies "where a suit for money damages is filed against an insurance company in receivership, on the ground that states have primary responsibility for regulating the insurance industry and have comprehensive receivership and liquidation regulations").

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

ETJ release is a "skein of state law that must be untangled" before reaching the federal claims. *See Sierra Club*, 112 F.3d at 795 (internal quotation omitted). The case involves the hyperlocal fact of whether the Armory is a "military base" under the statute. The issue is bound up in significant state policy issues about the ability of a property owner to leave the ETJ voluntarily, an area that the Legislature is actively legislating in. Abstention is warranted under *Burford*, too.

### D. The balance of equities favors the City in service of the public interest

As set forth in the Lilly Declaration, the City's watershed regulations, including the Save Our Springs Ordinance, apply in the ETJ and serve core public interests: protecting Austin's drinking water supply, reducing pollutant loading and erosion, and safeguarding Barton Springs and its endangered species. Continued City regulation in the ETJ is therefore squarely in the public interest.

The balance of equities likewise favors the City because multiple properties at issue are situated in watersheds where the City's standards directly shield the public's principal water resources. In non-SOS areas, the City's Water Supply Rural Watershed requirements govern development draining to Lake Austin, the City's principal drinking water source, and encompass the Schoenstatt campus—the only property identified in the Complaint.[11] Enjoining or diminishing the City's authority would risk irreversible environmental harm and increased treatment burdens to the public. On this record, the public-facing and preventive nature of the City's environmental code tips the balance decisively toward allowing the City to continue exercising its regulatory authority in the ETJ.

---

[11] Again, POWER has not identified any property owners that are part of POWER.

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

WHEREFORE, PREMISES CONSIDERED, Defendant City of Austin prays that the Plaintiff's claims be dismissed and that Plaintiff take nothing by reason of her suit, and prays that the Court grant Defendant all such other and further relief, both general and special, at law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

*/s/ Luke McHenry*
Luke McHenry
Assistant City Attorney
State Bar No. 24057993
Luke.mchenry@austintexas.gov
Hannah M. Vahl
Assistant City Attorney
State Bar No. 24082377
hannah.vahl@austintexas.gov
Austin City Attorney's Office
Telephone (512) 974-2401
Facsimile: (512) 974-1311

**ATTORNEY FOR DEFENDANTS**

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th of June, I electronically filed and served the above and foregoing document to:

**Via CM/ECF:**
Bill Cobb
Texas Bar No. 00796372
Alexa L. Gervasi
Texas Bar No. 24147091
COBB & GERVASI, PLLC
1250 S. Capital of Texas Hwy
Building 3, Suite 400
Austin, Texas 78746
(512) 955-5209
bill@cobbgervasi.com
alexa@cobbgervasi.com

**ATTORNEYS FOR PLAINTIFF**

*/s/ Luke McHenry*
Luke McHenry

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| PROPERTY OWNERS WITHSTANDING ETJ RETRACTIONS; AND THE SCHOENSTATT MOVEMENT OF AUSTIN,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF AUSTIN; T.C. BROADNAX, in his official capacity as City Manager; and KEITH MARS, in his official capacity as Director of Development Services Department,<br>        Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:26-cv-1518 |

**APPENDIX IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Declaration of Luke McHenry** ................................................................................ **App. 1**
        **Exhibit A—Texas Local Gov't Code Chapter. 42.101-105**............................. **App. 4**
        **Exhibit B—POWER Certificate of Formation** .................................................. **App. 11**
        **Exhibit C— Bee Caves Armory TCAD Property Summary Report** .............. **App. 15**
        **Exhibit D— TMD Correspondence**.............................................................. **App. 18**
        **Exhibit E— ETJ Regulations Chart** ........................................................... **App. 25**
**Declaration of Erica Brady** ................................................................................. **App. 27**
        **Exhibit A—Deficiency Template** ................................................................ **App. 31**
        **Exhibit B—Notification Letter Template** ..................................................... **App. 33**
        **Exhibit C—Correction Letters**................................................................... **App. 35**
**Declaration of Kate Castles**.................................................................................. **App. 45**
**Declaration of John McEwan**................................................................................ **App. 49**
        **Exhibit A— McEwan Communication - TMDPAO**........................................ **App. 53**
**Declaration of Leslie Lilly**................................................................................... **App. 56**

# Declaration of Luke McHenry

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

PROPERTY OWNERS WITHSTANDING §
ETJ RETRACTIONS; and THE §
SCHOENSTATT MOVEMENT OF §
AUSTIN, §
    *Plaintiff,* §
      §
      §
v. §
      §
CITY OF AUSTIN; T.C. BROADNAX, in §
his official capacity as City Manager; and §
KEITH MARS, in his official capacity as §
Director   of   Development   Services §
Department, §
    *Defendant.* §
      §

CIVIL ACTION NO. 1:26-cv-1518

**DECLARATION OF LUKE MCHENRY**

1.     I, Luke McHenry, declare that the following facts are true and correct to the best of my personal knowledge. I am at least 18 years old and competent to make this declaration. I submit this declaration in support of Defendants' Response to Plaintiffs' Motion for Preliminary Injunction.

2.     I am an attorney with the Austin City Attorney's Office (the "City"), a position I have held since March 2026. Prior to my role at the City, I practiced law at Reeves & Brightwell in Austin for 18 years, from February 2007 through October 2025.

3.     Attached as Exhibit A is a true and correct copy of Subchapter D (Sections §§ 42.101–.105) to Local Government Code Chapter 42 and Section 43.0117 to Local Government Code Chapter 43.

4.    Attached as Exhibit B is a true and correct copy of POWER's Certificate of Formation filed with the Texas Secretary of State.

5.    Attached as Exhibit C is a true and correct copy of the Travis County Appraisal District's Property Summary for the Bee Caves Armory.

6.    Attached as Exhibit D is a true and correct of redacted correspondence from Eric Vining, Deputy Director of the Texas Military Department's Government Affairs Office regarding the Bee Caves Armory.

7.    Attached as Exhibit E is a true and correct copy of Home Rule City and Residents Rights and Responsibilities in Full and Limited Purpose Annexation Areas (aka ETJ Regulations Chart).

8.    Upon information and belief, since the Correction Letters were issued in March 2026, only one property has been the subject of code enforcement in the form of a Notice of Violation and the Notice of Violation relates to the billboard set forth in the City's Response. The Notice of Violation is attached as Exhibit D (App. 17-20) to the Gervasi Declaration in Support of Plaintiffs' Motion for Preliminary Injunction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 24, 2026.    _____
Luke McHenry

# Exhibit A

# (Texas Local Gov't Code Chapter. 42.101-105)

Vernon's Texas Statutes and Codes Annotated
  Local Government Code (Refs & Annos)
    Title 2. Organization of Municipal Government (Refs & Annos)
      Subtitle C. Municipal Boundaries and Annexation
        Chapter 42. Extraterritorial Jurisdiction of Municipalities (Refs & Annos)
          Subchapter D. Release of Area by Petition of Landowner or Resident from Extraterritorial Jurisdiction (Refs & Annos)

V.T.C.A., Local Government Code § 42.101

§ 42.101. Applicability

Effective: September 1, 2025
Currentness

This subchapter does not apply to an area located:

(1) within five miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted;

(2) in an area that was voluntarily annexed into the extraterritorial jurisdiction that is located in a county:

(A) in which the population grew by more than 50 percent from the previous federal decennial census in the federal decennial census conducted in 2020; and

(B) that has a population greater than 240,000;

(3) within the portion of the extraterritorial jurisdiction of a municipality with a population of more than 1.4 million that is:

(A) within 15 miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted; and

(B) in a county with a population of more than two million;

(4) in an area designated as an industrial district under Section 42.044;

(5) in an area subject to a strategic partnership agreement entered into under Section 43.0751; or

(6) for the extraterritorial jurisdiction of a municipality located in four or more counties, one of which has a population of 2.1 million or more and is adjacent to a county with a population of 2.6 million or more:

Case 1:26-cv-01518-RP    Document 10    Filed 06/24/26    Page 31 of 84

(A) in an area subject to an active development agreement entered into under Section 212.172 with the municipality;

(B) in a platted or unplatted lot of less than 12 acres unless included with the other land in a petition for release under Section 42.102; or

(C) within a platted subdivision of 25 or more lots if the area is a single lot.

**Credits**

Added by Acts 2023, 88th Leg., ch. 106 (S.B. 2038), § 1, eff. Sept. 1, 2023. Amended by Acts 2025, 89th Leg., ch. 1041 (H.B. 2512), § 2, eff. Sept. 1, 2025.

V. T. C. A., Local Government Code § 42.101, TX LOCAL GOVT § 42.101

Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-01518-RP     Document 10     Filed 06/24/26     Page 32 of 84

Vernon's Texas Statutes and Codes Annotated
  Local Government Code (Refs & Annos)
    Title 2. Organization of Municipal Government (Refs & Annos)
      Subtitle C. Municipal Boundaries and Annexation
        Chapter 42. Extraterritorial Jurisdiction of Municipalities (Refs & Annos)
          Subchapter D. Release of Area by Petition of Landowner or Resident from Extraterritorial Jurisdiction (Refs & Annos)

V.T.C.A., Local Government Code § 42.102

§ 42.102. Authority to File Petition for Release

Effective: September 1, 2023
Currentness

(a) A resident of an area in a municipality's extraterritorial jurisdiction may file a petition with the municipality in accordance with this subchapter for the area to be released from the extraterritorial jurisdiction.

(b) The owner or owners of the majority in value of an area consisting of one or more parcels of land in a municipality's extraterritorial jurisdiction may file a petition with the municipality in accordance with this subchapter for the area to be released from the extraterritorial jurisdiction.

**Credits**
Added by Acts 2023, 88th Leg., ch. 106 (S.B. 2038), § 1, eff. Sept. 1, 2023.

Notes of Decisions (1)

V. T. C. A., Local Government Code § 42.102, TX LOCAL GOVT § 42.102
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

---

**End of Document** <span style="float:right">© 2026 Thomson Reuters. No claim to original U.S. Government Works.</span>

Vernon's Texas Statutes and Codes Annotated
  Local Government Code (Refs & Annos)
    Title 2. Organization of Municipal Government (Refs & Annos)
      Subtitle C. Municipal Boundaries and Annexation
        Chapter 42. Extraterritorial Jurisdiction of Municipalities (Refs & Annos)
          Subchapter D. Release of Area by Petition of Landowner or Resident from Extraterritorial Jurisdiction (Refs & Annos)

V.T.C.A., Local Government Code § 42.103

§ 42.103. Applicability of Other Law

Effective: September 1, 2023
Currentness

Chapter 277, Election Code, applies to a petition requesting removal under this subchapter.

**Credits**
Added by Acts 2023, 88th Leg., ch. 106 (S.B. 2038), § 1, eff. Sept. 1, 2023.

V. T. C. A., Local Government Code § 42.103, TX LOCAL GOVT § 42.103
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-01518-RP    Document 10    Filed 06/24/26    Page 34 of 84

> Vernon's Texas Statutes and Codes Annotated
>   Local Government Code (Refs & Annos)
>     Title 2. Organization of Municipal Government (Refs & Annos)
>       Subtitle C. Municipal Boundaries and Annexation
>         Chapter 42. Extraterritorial Jurisdiction of Municipalities (Refs & Annos)
>           Subchapter D. Release of Area by Petition of Landowner or Resident from Extraterritorial Jurisdiction (Refs & Annos)

V.T.C.A., Local Government Code § 42.104

§ 42.104. Petition Requirements

Effective: September 1, 2023
Currentness

(a) A petition requesting release under this subchapter must be signed by:

(1) more than 50 percent of the registered voters of the area described by the petition as of the date of the preceding uniform election date; or

(2) a majority in value of the holders of title of land in the area described by the petition, as indicated by the tax rolls of the applicable central appraisal district.

(b) A person filing a petition under this subchapter must satisfy the signature requirement described by Subsection (a) not later than the 180th day after the date the first signature for the petition is obtained.

(c) A signature collected under this section must be in writing.

(d) The petition must include a map of the land to be released and describe the boundaries of the land to be released by:

(1) metes and bounds; or

(2) lot and block number, if there is a recorded map or plat.

**Credits**
Added by Acts 2023, 88th Leg., ch. 106 (S.B. 2038), § 1, eff. Sept. 1, 2023.

V. T. C. A., Local Government Code § 42.104, TX LOCAL GOVT § 42.104
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

---

**End of Document** <span style="float:right">© 2026 Thomson Reuters. No claim to original U.S. Government Works.</span>

Vernon's Texas Statutes and Codes Annotated
    Local Government Code (Refs & Annos)
        Title 2. Organization of Municipal Government (Refs & Annos)
            Subtitle C. Municipal Boundaries and Annexation
                Chapter 42. Extraterritorial Jurisdiction of Municipalities (Refs & Annos)
                    Subchapter D. Release of Area by Petition of Landowner or Resident from Extraterritorial Jurisdiction (Refs & Annos)

V.T.C.A., Local Government Code § 42.105

§ 42.105. Results of Petition

Effective: September 1, 2023

Currentness

(a) A petition requesting removal under this subchapter shall be verified by the municipal secretary or other person responsible for verifying signatures.

(b) The municipality shall notify the residents and landowners of the area described by the petition of the results of the petition. The municipality may satisfy this requirement by notifying the person who filed the petition under Section 42.102.

(c) If a resident or landowner obtains the number of signatures on the petition required under Section 42.104 to release the area from the municipality's extraterritorial jurisdiction, the municipality shall immediately release the area from the municipality's extraterritorial jurisdiction.

(d) If a municipality fails to take action to release the area under Subsection (c) by the later of the 45th day after the date the municipality receives the petition or the next meeting of the municipality's governing body that occurs after the 30th day after the date the municipality receives the petition, the area is released by operation of law.

(e) Notwithstanding any other law, an area released from a municipality's extraterritorial jurisdiction under this section may not be included in the extraterritorial jurisdiction or the corporate boundaries of a municipality, unless the owner or owners of the area subsequently request that the area be included in the municipality's extraterritorial jurisdiction or corporate boundaries.

**Credits**
Added by Acts 2023, 88th Leg., ch. 106 (S.B. 2038), § 1, eff. Sept. 1, 2023.

Notes of Decisions (1)

V. T. C. A., Local Government Code § 42.105, TX LOCAL GOVT § 42.105
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit B

# (POWER Certificate of Formation)

| **Form 202**<br>**(Revised 12/21)**<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>Instructions<br>**Filing Fee: $25** | <br><br>**Certificate of Formation**<br>**Nonprofit Corporation** | This space reserved for office use. |

## Article 1 – Entity Name and Type

The filing entity being formed is a nonprofit corporation. The name of the entity is:

Property Owners Withstanding ETJ Retractions

## Article 2 – Registered Agent and Registered Office
### (See instructions. Select and complete either A or B and complete C.)

☐ **A.** The initial registered agent is an organization (cannot be entity named above) by the name of:

---

**OR**

☑ **B.** The initial registered agent is an individual resident of the state whose name is set forth below:

| Curtis | | Ford | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

**C.** The business address of the registered agent and the registered office address is:

| 3701 Bee Cave Rd Ste 101 | Austin | TX | 78746 |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

## Article 3 – Management

The management of the affairs of the corporation is vested in the board of directors. The number of directors constituting the initial board of directors and the names and addresses of the persons who are to serve as directors until the first annual meeting of members or until their successors are elected and qualified are as follows:

*A minimum of three directors is required.*

| Director 1 | | | | | |
|---|---|---|---|---|---|
| Curtis | | Ford | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| 3701 Bee Cave Rd Ste 101 | Austin | | TX | 78746 | USA |
| *Street or Mailing Address* | *City* | | *State* | *Zip Code* | *Country* |

| Director 2 | | | | | |
|---|---|---|---|---|---|
| Craig | | Jenkins | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| 3701 Bee Cave Rd Ste 101 | Austin | | TX | 78746 | USA |
| *Street or Mailing Address* | *City* | | *State* | *Zip Code* | *Country* |

| Director 3 | | | | | |
|---|---|---|---|---|---|
| Haylee | | Ford | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| 3701 Bee Cave Rd Ste 101 | Austin | | TX | 78746 | USA |
| *Street or Mailing Address* | *City* | | *State* | *Zip Code* | *Country* |

**OR**

☐ The management of the affairs of the corporation is to be vested in the nonprofit corporation's members.

### Article 4 – Membership
(See instructions. Do not select statement B if the corporation is to be managed by its members.)

☑ A. The nonprofit corporation shall have members.

☐ B. The nonprofit corporation will have no members.

### Article 5 – Purpose
(See instructions. This form does not contain language needed to obtain a tax-exempt status on the state or federal level.)

The nonprofit corporation is organized for the following purpose or purposes:

To reverse the City's of Austin's retraction of numerous ETJ releases, including but not limited to filing

litgation to achieve this resutl.

*The following text area may be used to include any additional language or provisions that may be needed to obtain tax-exempt status.*

Form 202                                    2

Appx. Page 13

## Initial Mailing Address

(Provide the mailing address to which state franchise tax correspondence should be sent.)

| 3701 Bee Cave Rd Ste 101 | Austin | TX | 78746 | USA |
|---|---|---|---|---|
| *Mailing Address* | *City* | *State* | *Zip Code* | *Country* |

## Supplemental Provisions/Information
(See instructions.)

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

## Organizer

The name and address of the organizer:

Curtis Ford
*Name*

| 3701 Bee Cave Rd Ste 101 | Austin | TX | 78746 |
|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Zip Code* |

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned also affirms that, to the best knowledge of the undersigned, the name provided as the name of the filing entity does not falsely imply an affiliation with a governmental entity. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date: 4-8-2026

Signature of organizer

Curtis For
Printed or typed name of organizer

Form 202                                  3

# Exhibit C

# (Bee Caves Armory TCAD Property Summary Report)

## GENERAL INFO

### ACCOUNT

| | |
|---|---|
| Property ID: | 118723 |
| Geographic ID: | 0118270105 |
| Type: | R |
| Zoning: | 0 |
| Agent: | |
| Legal Description: | ABS 198 SUR 504 CHAMBERS T J & ABS 267 SUR 509 EANES A ACR 11.4900 |
| Property Use: | 75 |

### OWNER

| | |
|---|---|
| Name: | UNITED STATES OF AMERICA |
| Secondary Name: | % US ATTORNEY OFF/DANIEL CASTILLO |
| Mailing Address: | 816 CONGRESS AVE STE 1000  AUSTIN TX  78701-2486 |
| Owner ID: | 1672168 |
| % Ownership: | 100.000000 |
| Exemptions: | EX-XV - Other Exemptions (including public property, religious organizations, |

### LOCATION

| | |
|---|---|
| Address: | BEE CAVE RD, TX 78746 |
| Market Area: | |
| Market Area CD: | SW |
| Map ID: | 011827 |

### PROTEST

Protest Status:
Informal Date:
Formal Date:

## VALUES

### CURRENT VALUES

| | |
|---|---|
| Land Homesite: | $0 |
| Land Non-Homesite: | $6,006,053 |
| Special Use Land Market: | $0 |
| Total Land: | $6,006,053 |
| | |
| Improvement Homesite: | $23,389 |
| Improvement Non-Homesite: | $0 |
| Total Improvement: | $23,389 |
| | |
| Market: | $6,029,442 |
| Special Use Exclusion (-): | $0 |
| Appraised: | $6,029,442 |
| Value Limitation Adjustment (-): | $0 |
| | |
| Net Appraised: | $6,029,442 |

### VALUE HISTORY



### VALUE HISTORY

| Year | Land Market | Improvement | Special Use Exclusion | Appraised | Value Limitation Adj (-) | Net Appraised |
|---|---|---|---|---|---|---|
| 2026 | $6,006,053 | $23,389 | $0 | $6,029,442 | $0 | $6,029,442 |
| 2025 | $6,006,053 | $0 | $0 | $6,006,053 | $0 | $6,006,053 |
| 2024 | $1,453,162 | $0 | $0 | $1,453,162 | $0 | $1,453,162 |
| 2023 | $1,453,162 | $0 | $0 | $1,453,162 | $0 | $1,453,162 |
| 2022 | $1,453,162 | $0 | $0 | $1,453,162 | $0 | $1,453,162 |

## TAXING UNITS

| Unit | Description | Tax Rate | Net Appraised | Taxable Value |
|------|-------------|----------|---------------|---------------|
| 03 | TRAVIS COUNTY | 0.375845 | $6,029,442 | $0 |
| 08 | EANES ISD | 0.832200 | $6,029,442 | $0 |
| 0A | TRAVIS CENTRAL APP DIST | 0.000000 | $6,029,442 | $0 |
| 10 | TRAVIS CO WCID NO 10 | 0.059200 | $6,029,442 | $0 |
| 2J | TRAVIS COUNTY HEALTHCARE | 0.118023 | $6,029,442 | $0 |
| 39 | TRAVIS CO ESD NO 9 | 0.075800 | $6,029,442 | $0 |

## IMPROVEMENT

| Improvement #1: | Detail Only | Improvement Value: | $23,389 | Main Area: | 0 |
|---|---|---|---|---|---|
| State Code: | F3 | Description: COMM SOLAR ARRAY SYSTEM | | Gross Building Area: | 67.5 |

| Type | Description | Class CD | Exterior Wall | Number of Units | EFF Year Built | Year | SQFT |
|------|-------------|----------|---------------|-----------------|----------------|------|------|
| 411 | SOLAR DEVICES | * | | 0 | 2013 | 2013 | 67.5 |

**Improvement Features**

## LAND

| Land | Description | Acres | SQFT | Cost per SQFT | Market Value | Special Use Value |
|------|-------------|-------|------|---------------|--------------|-------------------|
| LAND | Land | 11.4900 | 500,504.4 | $12.00 | $6,006,053 | $0 |

## DEED HISTORY

| Deed Date | Type | Description | Grantor/Seller | Grantee/Buyer | Book ID | Volume | Page | Instrument |
|-----------|------|-------------|----------------|---------------|---------|--------|------|------------|

# Exhibit D

# (TMD Correspondence)

**From:**
**To:**
**Subject:**
**Date:**
**Attachments:**





*Scheduled Meeting Disclosure Information: Written disclosure is required by visitors when attending a scheduled meeting with a City Official regarding a municipal question for compensation on behalf of another person. Anyone scheduling or accepting a meeting invitation with a City Official must either acknowledge that the disclosure requirement does not apply or fill out this form before meeting. If in doubt, please fill out the form.*

---

**From:** Cole Wilson ██████████████████████
**Sent:** Tuesday, April 7, 2026 2:58 PM
**To:** Duchen, Marc <██████████████████████████
**Cc:** Smith, Carrie ████████████████████████████; Aspen Walker ████████████████████████
**Subject:** Fw: Office of Rep. Goodwin: Language Clarification - [UNCLASSIFIED]

> **External Email - Exercise Caution**

Hello CM Duchen and Carrie,

We received the following guidance from TMD yesterday, and it appears that COA Legal's interpretation was correct. Please let me know if you have any follow up questions.

Best,
Cole

Cole Wilson
Chief of Staff
The Office of Representative Vikki Goodwin
-

██████████
██████████
████████████████

---

**From:** Aspen Walker <██████████████████████████
**Sent:** Tuesday, April 7, 2026 1:20 PM
**To:** District10████████████████████████

**Cc:** Cole Wilson ███████████████████████
**Subject:** Fw: Office of Rep. Goodwin: Language Clarification - [UNCLASSIFIED]

Good afternoon,

I hope this message finds you well. In response to the Councilmember's request for additional clarification on the Bee Cave Armory, we received the following email.

Please let us know if any additional inquiries are required.

Best,

## Aspen Walker

District Director

State Representative Vikki Goodwin

[Texas House District 47](Texas House District 47)

███████████

P.O. Box 2910 Austin, TX 78768-2910



Please note that all scheduled meetings with Representative Goodwin are subject to change based on the Texas House of Representatives' schedule. We apologize for any inconveniences this may cause and appreciate your understanding.

---

**From:** Vining, Eric A NFG NG TXARNG (USA) <███████████████████████>
**Sent:** Monday, April 6, 2026 1:18 PM
**To:** Aspen Walker ██████████████████████████ Cole Wilson <███████████████████████
**Subject:** RE: Office of Rep. Goodwin: Language Clarification - [UNCLASSIFIED]

**UNCLASSIFIED**

Cole & Aspen,

Thanks for reaching out and discussing this issue with me a few weeks back. I spoke with our facilities folks

and we've determined our property at Bee Caves is a federally owned facility (both the land and the constructed facilities are federal). Additionally, I can confirm that we have uniformed members of the Texas National Guard that actively report to the facility to conduct operations during the regular work week and during monthly weekend drills. This appears to confirm that the facility qualifies as a 'military base', as defined in Sec. 43.0117, Texas Local Government Code:

**Sec. 43.0117. AUTHORITY OF MUNICIPALITY TO ANNEX AREA NEAR MILITARY BASE.** (a) In this section, "military base" means a presently functioning federally owned or operated military installation or facility.

As for the facility's applicability to Sec. 42.101(1), Texas Local Government Code, what constitutes an "active training program" isn't clearly defined, so it's difficult to say if any operations being conducted at the facility meet this definition.

Tangentially related, here's a link to an article our public affairs office did a few years back detailing some of the history of the armory; for background and reference on the facility: https://tmd.texas.gov/the-little-armory-atop-a-hill.

I hope this information is helpful. As always, please let me know if your constituents have any further questions or if there's anything else I can do to assist.

**Eric A. Vining**

Deputy Director

Government Affairs Office - GAO

Texas Military Department



**UNCLASSIFIED**

*Disclaimer: This message and any attachments are intended for informational purposes only and do not constitute legal advice. Sender is not a licensed attorney in the State of Texas. Additionally, no information or attachments provided should be considered the legal opinion of the Texas Military Department, the State of Texas, or the United States Department of Defense and its subordinate entities.*

**From:** Aspen Walker <▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Sent:** Tuesday, March 24, 2026 11:53 AM
**To:** Vining, Eric A NFG NG TXARNG (USA) <e▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Cc:** Cole Wilson <▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Subject:** Office of Rep. Goodwin: Language Clarification

▌You don't often get email from ▮▮▮▮▮▮▮▮▮▮▮▮    Learn why this is important

Good morning Eric,

I hope this message finds you well. Cole Wilson, our Chief of Staff, informed me that he was able to chat with you briefly about SB 2038 from the 88th Session in 2023, which allows for property owners to petition for release from the City's extraterritorial jurisdiction (ETJ).

We spoke with the gov. relations team for the City of Austin, who informed us that under §42.101(1) of the Texas Local Government Code, properties located within five miles of the boundary of a military base are not eligible for release from a municipality's extraterritorial jurisdiction under SB 2038.  Therefore, properties within 5 miles of the Bee Caves Armory are not eligible for release from the ETJ.

Is it possible for y'all's legal team to clarify for us the definition of a military base for us? We are trying to help those effected determine whether the armory would count as a military base.

Thanks for your help!

## Aspen Walker

District Director

State Representative Vikki Goodwin

Texas House District 47

(▮▮▮▮▮▮▮▮

P.O. Box 2910 Austin, TX 78768-2910



Please note that all scheduled meetings with Representative Goodwin are subject to change based on the Texas House of Representatives' schedule. We apologize for any inconveniences this may cause and appreciate your understanding.

**UNCLASSIFIED**

**CAUTION:** This is an EXTERNAL email. Please use caution when clicking links or opening attachments. If you believe this to be a malicious or phishing email, please report it using the "Report Message" button in Outlook.
For any additional questions or concerns, contact CSIRT at "cybersecurity@austintexas.gov".

# Exhibit E

# (ETJ Regulations Chart)

## Home Rule City and Residents' Rights and Responsibilities
## in Full and Limited Purpose Annexation Areas

| | ETJ | Limited Purpose[1] | Full Purpose |
|---|---|---|---|
| **Land Use Regulations** | | | |
| Subdivision regulations | Yes | Yes | Yes |
| Zoning regulations | No | Yes | Yes |
| Technical codes | No[2] | Yes | Yes |
| Public health and sanitation | No | Yes | Yes |
| Parking regulations | No | Yes | Yes |
| Off-premise sign regulations | Yes | Yes | Yes |
| Airport Hazard regulations | Yes[3] | Yes | Yes |
| Water quality regulations | Yes | Yes | Yes |
| Tree regulations | No | Yes | Yes |
| **Fiscal** | | | |
| Ad valorem taxes levied | No | No | Yes |
| Sales taxes levied | No | No | Yes |
| City general fund dollars are spent in the area | No | Limited[4] | Yes |
| **City Service Provision** | | | |
| Fire service | No[5] | No[5] | Yes |
| Police service | No | No | Yes |
| Street and road maintenance | No | No | Yes |
| **Voting/Office Rights** | | | |
| Vote in City Council member election | No | Yes | Yes |
| Vote in charter amendment election | No | Yes | Yes |
| Vote in bond election | No | No | Yes |
| Run for city office | No | No | Yes |

1) Annexed for planning and zoning AND health and safety purposes

2) If served by Austin Energy, must comply with electrical code; if served by Austin water, must comply with plumbing code

3) Within airport hazard area relating to the airport

4) City funds may be spent only in furtherance of the limited purposes for which annexed

5) Yes, if through Automatic Aid Agreements with ESD

Updated 6/2/2025

# Declaration of Erica Brady

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

PROPERTY OWNERS WITHSTANDING §
ETJ RETRACTIONS; and THE §
SCHOENSTATT MOVEMENT OF §
AUSTIN, §
     *Plaintiff,* §     CIVIL ACTION NO. 1:26-cv-1518
 §
 §
v. §
 §
CITY OF AUSTIN; T.C. BROADNAX, in §
his official capacity as City Manager; and §
KEITH MARS, in his official capacity as §
Director of Development Services §
Department, §
     *Defendant.* §
 §

## DECLARATION OF ERIKA BRADY

1.     I, Erika Brady, declare that the following facts are true and correct to the best of my personal knowledge.

2.     I am at least 18 years old and competent to make this declaration.

3.     I am the City Clerk for the City of Austin (the "City"), a position I have held since May 2025. Prior to becoming City Clerk I served as the Deputy City Clerk, Interim Deputy City Clerk, and Assistant City Clerk. Altogether, I have worked over 12 years for the City.

4.     As the City Clerk, I oversee the Austin City's Clerks Office, which is responsible for, among other things, managing local elections and oversight of the legislative process in conjunction with City Council.

5.     In my role as City Clerk, I am familiar with the ETJ process set forth in Subchapter D, §§ 42.101-42.105, of the Texas Local Government Code which took effect on September 1,

Appx. Page 28

2023. I am also familiar with the City's process for reviewing an ETJ Petition for Release ("Release Petition").

6.   Upon receipt of a Release Petition receipt the City Clerk's Office will verify the signatures as required by §42.105(a). If the signatures are verified, the City Clerk's Office will next notify the City's Planning Department. The Planning Department will then review the Release Petition to ensure each complies with the Petition Requirements set forth in §42.104. This includes a review of the Release Petition to ensure it includes a map of the land to be released and a description of the boundaries of the land to be released. The Planning Department would then notify the City Clerk's Office if the Release Petition is approved or disapproved.

7.   The City Clerk's Office notified each petitioner of the results of the Release Petition as required by Subchapter D, Section 42.105(b). If a Release Petition did not satisfy the requirements of Subchapter D—for example, because the Release Petition failed to include a map or adequately describe the land' boundaries—the City promptly notified the petitioner and identified the deficiency. A true and accurate example of the Deficiency Letter is attached as Exhibit A. If a Release Petition met the statutory requirements of Subchapter D, Sections 42.102 and 42.104, the City notified the petitioner that the Release Petition met the applicable statutory requirements, as required by § 42.105(b), and that the area described in the petition would be formally released from the City's ETJ under § 42.105(d). A true and accurate example of the Notification Letter is attached as Exhibit B.

8.   The Notification Letters did not advise any petitioner that any subject property was being released pursuant to Section 42.023 or any other authority.

9.   On March 13, 2026, correction letters notifying each ineligible property owner that the Notification Letters was issued in error and is "void and of no force or effect." The Correction

Letters advised the property was within five miles of the Armory and that under state law the property was not eligible for release from the City's ETJ. A true and accurate example of the Correction Letters is attached as Exhibit C.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 24, 2026.    _____
Erika Brady

# Exhibit A
# (Deficiency Template)



September 29, 2023


Dear XXXX,

The release of area by petition from ETJ as noted below was filed with the City Clerk on **DATE**.

*Legal Description*

The City Clerk has reviewed your petition for compliance with State law requirements and determined that it does not comply with the following requirements:

☐The submitted petition has not been submitted by a resident of the Area or the majority of landowner(s) of the Area. (Section 42.102 of the Texas Local Government Code).

☐The submitted petition does not include a legal description of the Area by either metes or bounds description or by Lot and Block, if there is a recorded map or plat. (Section 42.104 of the Texas Local Government Code).

☐The submitted petition does not include a map of the Area.  (Section 42.104 of the Texas Local Government Code).

☐The submitted petition does not include signatures from either 50% of the registered voters of the Area or the majority value land title holders in the Area.

☐The submitted petition does not comply with Chapter 277 of the Elections Code (Section 42.103) as follows:

   ☐Signature is not written in signer's handwriting
   ☐Does not include signer's printed name
   ☐Does not include either signer's voter registration number or date of birth
   ☐Does not include signer's residence address
   ☐Does not include date of signature
   ☐All signatures were not obtained within 180 days of the first signature collected.

Because the petition does not meet the requirements of state law, a valid petition **has not** been filed, and the City will take no further action on this petition. You may submit an entirely new petition for the Clerk's review during business hours Monday – Friday.

Sincerely,



Erika Brady, MMC, TRMC       Stephanie Hall, CMC, TRMC       Davetta Edwards, TRMC
Austin City Clerk                    Deputy City Clerk              Assistant City Clerk

Bethany Smith
Assistant City Clerk

# Exhibit B
# (Notification Letter Template)



**DATE**

Dear [**NAME**],

The release of area by petition from the City of Austin's Extraterritorial Jurisdiction (ETJ) as noted below was filed with the City Clerk on [**DATE FILED**].

*[LEGAL DESCRIPTION OF PETITION]*

This petition meets the statutory requirements identified in Texas Local Government Code Sections 42.102 and 42.104. This letter serves as notification by the City of Austin that the submitted petition meets the applicable requirements, as required by Texas Local Government Code Sec. 42.105 (b).

The area described in the petition will be formally released from the City of Austin's ETJ as determined by Texas Local Government Code Sec, 42.105(d).

Sincerely,


Erika Brady, MMC, TRMC       Stephanie Hall, CMC, TRMC       Davetta Edwards, TRMC
Austin City Clerk            Deputy City Clerk               Assistant City Clerk

Bethany Smith
Assistant City Clerk

# Exhibit C
# (Correction Letters)



301 West Second Street
Austin, TX 78701

**THIS LETTER CONCERNS REGULATIONS APPLICABLE TO YOUR PROPERTY.**

Date: March 13, 2026

**Re: Ineligible Property for Release from Austin's Extraterritorial Jurisdiction (ETJ)**

Property: ABS 627 SUR 38 PERKINS I ACR .568 MH / BEE CAVE RD

Dear Property Owner,

On October 30, 2025, you or your representative requested that the City release your property from the City's ETJ. In response to the request, the City issued a letter granting release of the property from the City's extraterritorial jurisdiction (ETJ). Upon subsequent review, the City has determined that the letter was issued in error and is **void and of no force or effect.**

Section 42.101(1) of the Texas Local Government Code states that a property located within five miles of the boundary of a military base is not eligible for release from a municipality's extraterritorial jurisdiction. Upon further review, the City determined that the property is located **within five miles of the boundary of a military base**, known as the Bee Caves Armory.

Accordingly, under state law, **the property is not eligible for release from the City's ETJ.** Therefore, **the property remains within the boundaries of the City's ETJ, and all applicable municipal authority, regulations, benefits, and obligations remain in effect. Your property will not be subject to City of Austin property taxes.**

If you have questions regarding this determination or require additional clarification, please email AustinETJRelease@austintexas.gov.

Thank you,
Erika Brady, MMC, TRMC
Austin City Clerk

9489 0090 0027 6244 7463 35

CC:    David Johns via david@cobbjohns.com

Appx. Page 36

 **Austin**

301 West Second Street
Austin, TX 78701

**THIS LETTER CONCERNS REGULATIONS APPLICABLE TO YOUR PROPERTY.**

Date: March 13, 2026

**Re: Ineligible Property for Release from Austin's Extraterritorial Jurisdiction (ETJ)**

Property: ABS 626 SUR 37 PERKINS I ACR 5.690 / ADDIE ROY RD

Dear Property Owner,

On July 2, 2024, you or your representative requested that the City release your property from the City's ETJ. In response to the request, the City issued a letter granting release of the property from the City's extraterritorial jurisdiction (ETJ). Upon subsequent review, the City has determined that the letter was issued in error and is **void and of no force or effect.**

Section 42.101(1) of the Texas Local Government Code states that a property located within five miles of the boundary of a military base is not eligible for release from a municipality's extraterritorial jurisdiction. Upon further review, the City determined that the property is located **within five miles of the boundary of a military base**, known as the Bee Caves Armory.

Accordingly, under state law, **the property is not eligible for release from the City's ETJ.** Therefore, **the property remains within the boundaries of the City's ETJ, and all applicable municipal authority, regulations, benefits, and obligations remain in effect. Your property will not be subject to City of Austin property taxes**.

If you have questions regarding this determination or require additional clarification, please email AustinETJRelease@austintexas.gov.

Thank you,
Erika Brady, MMC, TRMC
Austin City Clerk

9489 0090 0027 6244 7465 02

CC:    David Johns via david@cobbjohns.com



301 West Second Street
Austin, TX 78701

**THIS LETTER CONCERNS REGULATIONS APPLICABLE TO YOUR PROPERTY.**

Date: March 13, 2026

**Re: Ineligible Property for Release from Austin's Extraterritorial Jurisdiction (ETJ)**

Property: LOT 5 BLK A ROB ROY ON THE LAKE SEC 1 / 105 N WESTON LN

Dear Property Owner,

On July 2, 2024, you or your representative requested that the City release your property from the City's ETJ. In response to the request, the City issued a letter granting release of the property from the City's extraterritorial jurisdiction (ETJ). Upon subsequent review, the City has determined that the letter was issued in error and is **void and of no force or effect.**

Section 42.101(1) of the Texas Local Government Code states that a property located within five miles of the boundary of a military base is not eligible for release from a municipality's extraterritorial jurisdiction. Upon further review, the City determined that the property is located **within five miles of the boundary of a military base**, known as the Bee Caves Armory.

Accordingly, under state law, **the property is not eligible for release from the City's ETJ.** Therefore, **the property remains within the boundaries of the City's ETJ, and all applicable municipal authority, regulations, benefits, and obligations remain in effect. Your property will not be subject to City of Austin property taxes.**

If you have questions regarding this determination or require additional clarification, please email AustinETJRelease@austintexas.gov.

Thank you,
Erika Brady, MMC, TRMC
Austin City Clerk

9489 0090 0027 6244 7467 17

CC:    David Johns via david@cobbjohns.com

Appx. Page 38



301 West Second Street
Austin, TX 78701

**THIS LETTER CONCERNS REGULATIONS APPLICABLE TO YOUR PROPERTY.**

Date: March 13, 2026

**Re: Ineligible Property for Release from Austin's Extraterritorial Jurisdiction (ETJ)**

Property: LOT 6 BLK A ROB ROY ON THE LAKE SEC 1 / 107 N WESTON LN

Dear Property Owner,

On July 2, 2024, you or your representative requested that the City release your property from the City's ETJ. In response to the request, the City issued a letter granting release of the property from the City's extraterritorial jurisdiction (ETJ). Upon subsequent review, the City has determined that the letter was issued in error and is **void and of no force or effect.**

Section 42.101(1) of the Texas Local Government Code states that a property located within five miles of the boundary of a military base is not eligible for release from a municipality's extraterritorial jurisdiction. Upon further review, the City determined that the property is located **within five miles of the boundary of a military base**, known as the Bee Caves Armory.

Accordingly, under state law, **the property is not eligible for release from the City's ETJ.** Therefore, **the property remains within the boundaries of the City's ETJ, and all applicable municipal authority, regulations, benefits, and obligations remain in effect. Your property will not be subject to City of Austin property taxes**.

If you have questions regarding this determination or require additional clarification, please email AustinETJRelease@austintexas.gov.

Thank you,
Erika Brady, MMC, TRMC
Austin City Clerk

9489 0090 0027 6244 7468 16

CC:    David Johns via david@cobbjohns.com

Appx. Page 39



301 West Second Street
Austin, TX 78701

**THIS LETTER CONCERNS REGULATIONS APPLICABLE TO YOUR PROPERTY.**

Date: March 13, 2026

**Re: Ineligible Property for Release from Austin's Extraterritorial Jurisdiction (ETJ)**

Property: ABS 626 SUR 37 PERKINS I ACR 17.665 / 225 ADDIE ROY RD

Dear Property Owner,

On July 2, 2024, you or your representative requested that the City release your property from the City's ETJ. In response to the request, the City issued a letter granting release of the property from the City's extraterritorial jurisdiction (ETJ). Upon subsequent review, the City has determined that the letter was issued in error and is **void and of no force or effect.**

Section 42.101(1) of the Texas Local Government Code states that a property located within five miles of the boundary of a military base is not eligible for release from a municipality's extraterritorial jurisdiction. Upon further review, the City determined that the property is located **within five miles of the boundary of a military base**, known as the Bee Caves Armory.

Accordingly, under state law, **the property is not eligible for release from the City's ETJ.** Therefore, **the property remains within the boundaries of the City's ETJ, and all applicable municipal authority, regulations, benefits, and obligations remain in effect. Your property will not be subject to City of Austin property taxes.**

If you have questions regarding this determination or require additional clarification, please email AustinETJRelease@austintexas.gov.

Thank you,
Erika Brady, MMC, TRMC
Austin City Clerk

9489 0090 0027 6244 7468 47

CC:    David Johns via david@cobbjohns.com

Appx. Page 40

 **Austin**

301 West Second Street
Austin, TX 78701

**THIS LETTER CONCERNS REGULATIONS APPLICABLE TO YOUR PROPERTY.**

Date: March 13, 2026

**Re: Ineligible Property for Release from Austin's Extraterritorial Jurisdiction (ETJ)**

Property: LOT 2 COLDWATER SEC 1 AMENDED PLAT OF LOTS 1 & 2 OF (1-D-1W) / 7301
BRIDGE POINT PKWY

Dear Property Owner,

On November 22,2023, you or your representative requested that the City release your property from the City's ETJ. In response to the request, the City issued a letter granting release of the property from the City's extraterritorial jurisdiction (ETJ). Upon subsequent review, the City has determined that the letter was issued in error and is **void and of no force or effect.**

Section 42.101(1) of the Texas Local Government Code states that a property located within five miles of the boundary of a military base is not eligible for release from a municipality's extraterritorial jurisdiction. Upon further review, the City determined that the property is located **within five miles of the boundary of a military base,** known as the Bee Caves Armory.

Accordingly, under state law, **the property is not eligible for release from the City's ETJ.** Therefore, **the property remains within the boundaries of the City's ETJ, and all applicable municipal authority, regulations, benefits, and obligations remain in effect. Your property will not be subject to City of Austin property taxes.**

If you have questions regarding this determination or require additional clarification, please email AustinETJRelease@austintexas.gov.

Thank you,
Erika Brady, MMC, TRMC
Austin City Clerk

9489 0090 0027 6244 7476 39

CC:    David Johns/Bill Cobb via bill@cobbjohns.com



301 West Second Street
Austin, TX 78701

**THIS LETTER CONCERNS REGULATIONS APPLICABLE TO YOUR PROPERTY.**

Date: March 13, 2026

**Re: Ineligible Property for Release from Austin's Extraterritorial Jurisdiction (ETJ)**

Property: LOT 12 BLK A COLDWATER SEC 4 PHS A (1-d-1w) / 5113 QUIET MOUNTAIN CV

Dear Property Owner,

On November 22, 2023, you or your representative requested that the City release your property from the City's ETJ. In response to the request, the City issued a letter granting release of the property from the City's extraterritorial jurisdiction (ETJ). Upon subsequent review, the City has determined that the letter was issued in error and is **void and of no force or effect.**

Section 42.101(1) of the Texas Local Government Code states that a property located within five miles of the boundary of a military base is not eligible for release from a municipality's extraterritorial jurisdiction. Upon further review, the City determined that the property is located **within five miles of the boundary of a military base**, known as the Bee Caves Armory.

Accordingly, under state law, **the property is not eligible for release from the City's ETJ**. Therefore, **the property remains within the boundaries of the City's ETJ, and all applicable municipal authority, regulations, benefits, and obligations remain in effect. Your property will not be subject to City of Austin property taxes**.

If you have questions regarding this determination or require additional clarification, please email AustinETJRelease@austintexas.gov.

Thank you,
Erika Brady, MMC, TRMC
Austin City Clerk

9489 0090 0027 6244 7476 22

CC:    David Johns/Bill Cobb via bill@cobbjohns.com

Appx. Page 42

 **Austin**

301 West Second Street
Austin, TX 78701

**THIS LETTER CONCERNS REGULATIONS APPLICABLE TO YOUR PROPERTY.**

Date: March 13, 2026

**Re: Ineligible Property for Release from Austin's Extraterritorial Jurisdiction (ETJ)**

Property: LOT 11 BLK A COLDWATER SEC 4 PHS A (1-d-1w) / 7330 COLDWATER CANYON DR

Dear Property Owner,

On November 22, 2023, you or your representative requested that the City release your property from the City's ETJ. In response to the request, the City issued a letter granting release of the property from the City's extraterritorial jurisdiction (ETJ). Upon subsequent review, the City has determined that the letter was issued in error and is **void and of no force or effect.**

Section 42.101(1) of the Texas Local Government Code states that a property located within five miles of the boundary of a military base is not eligible for release from a municipality's extraterritorial jurisdiction. Upon further review, the City determined that the property is located **within five miles of the boundary of a military base,** known as the Bee Caves Armory.

Accordingly, under state law, **the property is not eligible for release from the City's ETJ.** Therefore, **the property remains within the boundaries of the City's ETJ, and all applicable municipal authority, regulations, benefits, and obligations remain in effect. Your property will not be subject to City of Austin property taxes.**

If you have questions regarding this determination or require additional clarification, please email AustinETJRelease@austintexas.gov.

Thank you,
Erika Brady, MMC, TRMC
Austin City Clerk

9489 0090 0027 6244 7476 15

CC:   David Johns/Bill Cobb via bill@cobbjohns.com

Appx. Page 43



301 West Second Street
Austin, TX 78701

## THIS LETTER CONCERNS REGULATIONS APPLICABLE TO YOUR PROPERTY.

Date: March 13, 2026

**Re: Ineligible Property for Release from Austin's Extraterritorial Jurisdiction (ETJ)**

Property: LOT 10 BLK 7 LOST CREEK SEC 2 / 6303 ROYAL BIRKDALE OVRLK

Dear Property Owner,

On September 11, 2025, you or your representative requested that the City release your property from the City's ETJ. In response to the request, the City issued a letter granting release of the property from the City's extraterritorial jurisdiction (ETJ). Upon subsequent review, the City has determined that the letter was issued in error and is **void and of no force or effect.**

Section 42.101(1) of the Texas Local Government Code states that a property located within five miles of the boundary of a military base is not eligible for release from a municipality's extraterritorial jurisdiction. Upon further review, the City determined that the property is located **within five miles of the boundary of a military base**, known as the Bee Caves Armory.

Accordingly, under state law, **the property is not eligible for release from the City's ETJ.** Therefore, the property remains within the boundaries of the City's ETJ, and all applicable municipal authority, regulations, benefits, and obligations remain in effect. Your property will not be subject to City of Austin property taxes.

If you have questions regarding this determination or require additional clarification, please email AustinETJRelease@austintexas.gov.

Thank you,
Erika Brady, MMC, TRMC
Austin City Clerk

9489 0090 0027 6244 7465 64

CC:    Cobb Johns via david@cobbjohns.com

# Declaration of Kate Castles

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PROPERTY OWNERS WITHSTANDING ETJ RETRACTIONS; and THE SCHOENSTATT MOVEMENT OF AUSTIN,<br>　　*Plaintiff,*<br><br>v.<br><br>CITY OF AUSTIN; T.C. BROADNAX, in his official capacity as City Manager; and KEITH MARS, in his official capacity as Director of Development Services Department,<br>　　*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:26-cv-1518 |

**DECLARATION OF KATE CASTLES**

1.　I, Kate Castles, declare that the following facts are true and correct to the best of my personal knowledge.

2.　I am at least 18 years old and competent to make this declaration.

3.　I am a Principal Planner in the Austing Planning ("Planning") department for the City of Austin (the "City"), a position I have held since October 2025.  Prior to October 2025, I was a Senior Planner with the City from January 2022 through October 2025.

4.　As Principal Planner I lead the Jurisdictional Matters team. The Jurisdictional Matters team is responsible for the management of annexation, disannexation, extraterritorial jurisdiction adjustments, special purpose districts, and Planning-related legislative interests.

5.     In my role as Principal Planner, I am familiar with the ETJ process set forth in Subchapter D, §§ 42.101-42.105, of the Texas Local Government Code.  I am also familiar with the City's process for reviewing an ETJ Petition for Release ("Release Petition").

6.     When the City receives a Release Petition, the City Clerk's Office will verify the signatures as required by §42.105(a).  If the signatures are verified, the City Clerk's Office will notify Planning.

7.     Planning will then determine whether the Release Petition includes the Petition Requirements set forth in §42.104.  Specifically, Planning verifies the Release Petition includes a map of the land to be released and a description of the boundaries of the land to be released.  The Release Petition can describe the boundaries of the land to be released by metes and bounds or lot and block number if there is a recorded map or plat.

8.     If a Release Petition satisfies the Petition Requirements set forth in §42.104, a Geographic Information System (GIS)  file is created for the property. GIS is a digital standard used to store geographical and spatial information.

9.     If a Release Petition satisfies the Petition Requirements set forth in §42.104 the City Clerk's Office is notified.  If a Release Petition does not satisfy the Petition Requirements set forth in §42.104 the City Clerk's Office is notified.

10.     In January 2026, I learned that many of the Release Petitions may have been void, because the properties were within five miles of the Bee Caves Armory.  My group, in conjunction with the City Clerk's Office, reviewed previously submitted release petitions which had property located within five miles of the Armory.  To determine whether the property fell within five miles of the Armory, Planning used GIS to create a 5-mile buffer from the parcel boundaries of the Bee Cave Armory property and identified the subject properties that fell within the buffer. The City

Clerk's Office and Planning determined that several Notification Letters were void because the areas identified in the petitions were ineligible for release given the proximity to the Bee Caves Armory.

11.    The City, including my office and the Planning Group, investigated whether the Bee Caves Armory fell within the statutory definition of what constitutes a military base. According to the Travis County Appraisal District ("TCAD"), the Bee Caves Armory is federally owned land.  A true and accurate screen shot of the TCAD information is attached as Exhibit C.

12.    I understand there is a dispute regarding a billboard located at 106 River Hills Road, which is near Bee Caves.  That address is within the City's ETJ and off premises billboards are not allowed in the City's ETJ.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 24, 2026.    _____

                                                                Kate Castles

# Declaration of John McEwan

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PROPERTY OWNERS WITHSTANDING ETJ RETRACTIONS; and THE SCHOENSTATT MOVEMENT OF AUSTIN,<br>  *Plaintiff,*<br><br>v.<br><br>CITY OF AUSTIN; T.C. BROADNAX, in his official capacity as City Manager; and KEITH MARS, in his official capacity as Director of Development Services Department,<br>  *Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:26-cv-1518 |

**DECLARATION OF JOHN MCEWAN**

1.  I, John McEwan, declare that the following facts are true and correct to the best of my personal knowledge.

2.  I am at least 18 years old and competent to make this declaration.

3.  My wife Jennifer and I live at 120 River Hills Road #2, near Bee Caves Road.

4.  In July 2025, Jennifer and I became aware that a billboard was being constructed at 106 River Hills Road, near our home. Because I have spent much of my career in real estate, including the development of both residential and commercial properties, I was surprised to see a billboard in that area.

5.  I had concerns that the billboard might not comply with sign regulations and was curious whether billboards were even allowed in the area. I was concerned about the proximity of the billboard to my home. I learned several other neighbors, including John Garvish, Jim Sheffield

and Louis Bonham, had similar concerns about the billboard. I reported my concerns to the City of Austin, as did Louis Bonham.

6.    Later I learned that there are regulations regarding billboards in Austin's extra-territorial jurisdiction and the parcel was within the City's extra-judicial territory when the July 2025 construction began.

7.    After reporting my concern to the City, I looked at the state statute and the process for having a property released from a City's extra-territorial jurisdiction. I learned that properties that were located within five miles of a military base were not eligible to be released. I reviewed Section 43.0117 which has the definition of a military base used in the law that created the process for having a property released from a City's extra-territorial jurisdiction. I wondered if the Bee Caves Armory was a military base under 43.0117 because if it did it seemed to me that a billboard could not be constructed at 106 River Hills Road.

8.    On January 10, 2026, I emailed the Texas Military Department Public Affairs Office about the Bee Caves Armory and asked the following: "Could you please confirm that this facility is currently an active military training site for the Texas Army National Guard for the 2025-2026 years? Specifically, I am looking to verify that units such as the 71st Troop Command still utilize this location for regular drills and training operations."

9.    On January 12, 2026, I received a response email from the Texas Military Department Public Affairs Office, stating: "Based on our current tracking, the Bee Caves Armory remains an active Texas Army National Guard training site. Units under the 71st Troop Command, including subordinate elements such as the 71st Theater Information Operations Group (TIOG) and the 100th Mobile Public Affairs Detachment (MPAD), are currently utilizing this and

associated facilities for scheduled drills and training activities during the 2025–2026 period." I have attached this correspondence to this Declaration as Exhibit A.

10.     That same day I forwarded my communication with the Texas Military Department Public Affairs Office to the City of Austin.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 24, 2026.     _____

John McEwan

# Exhibit A

# (McEwan Communication - TMDPAO)

**Monday, January 12, 2026 at 4:49:02 PM Central Standard Time**

**Subject:** Re: Inquiry - Installation 48055
**Date:** Monday, January 12, 2026 at 2:24:37 PM Central Standard Time
**From:** TMD PAO
**To:** John McEwan
**CC:** ██████████████████████████

Dear Mr. McEwan,

Apologies for the delayed response, and thank you for your inquiry.

Based on our current tracking, the Bee Caves Armory remains an active Texas Army National Guard training site. Units under the 71st Troop Command, including subordinate elements such as the 71st Theater Information Operations Group (TIOG) and the 100th Mobile Public Affairs Detachment (MPAD), are currently utilizing this and associated facilities for scheduled drills and training activities during the 2025–2026 period.

We appreciate your interest and support of the Texas Military Forces.

Cordially,

Texas Military Department- Public Affairs Office
Camp Mabry- Austin Texas
████████████████████
████████████
████████████

---

**From:** John McEwan ██████████████████████
**Sent:** Saturday, January 10, 2026 10:16 AM
**To:** TMD PAO ██████████████████████
**Cc:** ████████████████████████████████████
**Subject:** Inquiry - Installation 48055

# To the Texas Military Department Public Affairs Office,

I am writing to request a brief confirmation regarding the current status of the **Bee Caves Armory**, located at 408 Saint Stephens School

Road, Austin, TX 78746 (**DOD Installation ID: 48055**).

Could you please confirm that this facility is currently an **active military training site** for the Texas Army National Guard for the 2025-2026 calendar years? Specifically, I am looking to verify that units such as the 71st Troop Command still utilize this location for regular drills and training operations.

Thank you for your assistance and for the service of the Texas Military Forces.

Best regards,
John McEwan

**CAUTION:**

This email was received from an EXTERNAL source; use caution when clicking links or opening attachments. If you believe this to be a malicious and/or phishing email, please contact the Information Security team.

# Declaration of Leslie Lilly

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **PROPERTY OWNERS WITHSTANDING ETJ RETRACTIONS; AND THE SCHOENSTATT MOVEMENT OF AUSTIN,** <br> *Plaintiffs*, <br><br> **v.** <br><br> **CITY OF AUSTIN, TC BROADNAX AND KEITH MARS** <br> *Defendant.* | §§§§§§§§§§§§§ | **CIVIL ACTION NO. 1:26-cv-1518** |

## <u>DECLARATION OF LESLIE LILLY</u>

1. My name is Leslie Lilly. I am over the age of 18, of sound mind, and competent to make this declaration. The facts stated within it are within my personal knowledge and are true and correct.

2. I am an Environmental Conservation Program Manager for Austin Watershed Protection, a department of the City of Austin. In that capacity, I negotiate environmental protections for the City, review development projects for compliance with the City's environmental code and provide technical expertise on the environmental impacts of development on the City's waterways in terms of pollutant loads, erosive flows, critical environmental features, and related issues. I have worked at the City for four and a half years. Before coming to the City, I served as Conservation Director for The Trail Conservancy. I hold a bachelor's degree in plant biology from Reed College.

3. Austin's watershed regulations protect against the negative effect of development which include impacts to Austin's drinking water supply, increased pollutants in its waterways, and increased erosion. Austin's watershed regulations also protect sensitive environmental

areas such as Barton Springs, as well as the endangered species found within those sensitive watersheds. City watershed protection regulations apply in the City's extraterritorial jurisdiction ("ETJ").

4. One major source of watershed protection regulations is the Save Our Springs (SOS) Initiative, a citizen-initiated ordinance which passed in 1992 and is codified in City Code at Chapter 25-8, Subchapter A, Article 13 and Chapter 30-5, Subchapter A, Article 13. The purpose of the SOS Ordinance is to protect and preserve the Edwards Aquifer, Barton Creek, and the surrounding watersheds from the effects of development which can degrade water quality and impact the water supply of the aquifer. The SOS Ordinance limits impervious cover in watersheds contributing to Barton Springs to a maximum of 15 percent in the entire Edwards Aquifer recharge zone, 20 percent of the Edwards Aquifer contributing zone within the Barton Creek watershed, and 25 percent in the remainder of the Edwards Aquifer contributing zone. It also requires that sites provide non-degradation water quality treatment for stormwater runoff, removing pollutants to a level equivalent to the site's undeveloped condition. And, unlike other provisions in the City's environmental code, the SOS Ordinance can only be modified with a supermajority vote of the City Council.

5. Other watershed regulations applicable in the ETJ include the "Water Supply Rural Watershed Requirements" as codified in City Code § 25-8-411 through 25-8-454 and § 30-5-411 through 30-5-454. Their impervious cover restrictions are not as extensive as the SOS Ordinance. However, the regulations also provide protection and preservation of the Lake Austin watersheds from the impacts of development. The Water Supply Rural Watersheds drain to Lake Austin, which is the principal drinking water source for Austin.

6.  At least some of the properties that received notification letters from the City regarding their release petitions that were later deemed void are in sensitive watersheds, including those subject to the SOS Ordinance or the Water Supply Rural Watershed Requirement. For instance, it is my understanding that the Holden Hills subdivision, an approximately 500-acre subdivision subject to the SOS Ordinance, and the Schoenstatt Movement of Austin's campus, located in a Water Supply Rural Watershed, have property owners who petitioned for release from the City under S.B. 2038, had their petitions granted, and the City later declared those petitions void.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on June 24, 2026.

Leslie Lilly

Digitally signed by Leslie Lilly
DN: C=US,
E=leslie.lilly@austintexas.gov, O=City of
Austin, OU=Watershed Protection
Department, CN=Leslie Lilly
Date: 2026.06.24 12:55:56-05'00'

_____
LESLIE LILLY