IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PROPERTY OWNERS WITHSTANDING ETJ RETRACTIONS; AND THE SCHOENSTATT MOVEMENT OF AUSTIN,<br>          Plaintiffs,<br><br>v.<br><br>CITY OF AUSTIN; T.C. BROADNAX, in his official capacity as City Manager; and KEITH MARS, in his official capacity as Director of Development Services Department,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:26-cv-1518 |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendants City of Austin (the City), T.C. Broadnax, and Keith Mars (collectively "the Defendants") file this Answer and Affirmative Defenses to Plaintiffs' Complaint for Declaratory and Injunctive Relief [Doc. No. 1]. Pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, the Defendants respectfully show the Court the following:

**ORIGINAL ANSWER**

Pursuant to Federal Rule of Civil Procedure 8(b), the Defendants respond to each of the specific averments in Plaintiffs Complaint for Declaratory and Injunctive Relief [Doc No. 1] as set forth below. To the extent that the Defendants do not address a specific averment made by Plaintiffs, the Defendants expressly deny that averment.

1

Defendants' Answer and Affirmative Defenses

**JURISDICTION AND VENUE**

1.      This is a civil rights suit brought under the Fifth and Fourteenth Amendments to the U.S. Constitution and the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983, seeking declaratory and injunctive relief.

**RESPONSE:**

The Defendants admit the allegations contained in Paragraph 1.

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2202 and 42 U.S.C. § 1983. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**RESPONSE:**

The Defendants admit the allegations contained in Paragraph 2.

3.      Venue is proper in this district under 28 U.S.C. § 1391 because the City resides in this district and a substantial part of the events giving rise to the claims occurred in this district.

**RESPONSE:**

The Defendants admit the allegations contained in Paragraph 3.

**PARTIES**

4.      Plaintiff Property Owners Withstanding ETJ Retractions ("POWER") is a Texas nonprofit corporation in good standing. POWER was formed on April 8, 2026 (Texas Secretary of State File No. 806548296) for the purpose of vindicating the statutory and constitutional rights of property owners whose properties were released from the City's ETJ under Chapter 42 of the Texas Local Government Code and whose releases the City has now purported to rescind. POWER's membership includes property owners similarly affected by the City's March 2026 retraction.

2

Defendants' Answer and Affirmative Defenses

POWER's purpose includes obtaining declaratory and injunctive relief to prohibit the City from asserting jurisdiction it does not lawfully possess.

**RESPONSE:**

The Defendants admit the allegations contained in the first sentence of Paragraph 4 regarding POWER's formation and stated purpose but deny the properties were eligible for release from the City's ETJ under Chapter 42 of the Texas Local Government Code. The Defendants are without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 4 and therefore deny the same.

5. Plaintiff The Schoenstatt Movement of Austin ("Schoenstatt") is a Texas nonprofit religious organization that serves the Catholic diocese in the greater Austin area. Schoenstatt is the owner of real property in Travis County, Texas, identified as: (i) ABS 626 SUR 37 PERKINS I ACR 5.690 (Addie Roy Road); (ii) LOT 5 BLK A ROB ROY ON THE LAKE SEC 1 (105 N. Weston Lane); (iii) LOT 6 BLK A ROB ROY ON THE LAKE SEC 1 (107 N. Weston 2 Case 1:26-cv-01518-RP Document 1 Filed 06/05/26 Page 3 of 28 Lane); and (iv) ABS 626 SUR 37 PERKINS I ACR 17.665 (225 Addie Roy Road), each of which was released from the City's ETJ pursuant to Chapter 42 of the Texas Local Government Code.

**RESPONSE:**

The Defendants admit the allegations regarding Schoenstatt's ownership of the real property identified but are without sufficient knowledge to form a belief as to the truth of the remaining allegations regarding its status as a Texas nonprofit and therefore denies the same. The Defendants deny the property described was ever eligible for release from the City's ETJ under Chapter 42 of the Texas Local Government Code.

Defendants' Answer and Affirmative Defenses

6.      Defendant City of Austin is a Texas home-rule municipality incorporated in Travis County, Texas. Since 2023, the City has released approximately 170 properties located within five miles of Bee Caves Armory from its ETJ pursuant to Chapter 42 of the Texas Local Government Code, expressly determining that those properties satisfied the statutory requirements for mandatory release. The City now claims to have made a redetermination, retracting its releases and reasserting regulatory authority over those properties, including the Plaintiffs' properties.

**RESPONSE:**

The City of Austin admits it is a Texas home-rule municipality located in Travis County. The City denies the 170 properties located within five miles of Bee Caves Armory were ever eligible for release from the City's ETJ pursuant to Chapter 42 of the Texas Local Government Code.  The City denies the remaining allegations contained in Paragraph 6.

7.      Defendant T.C. Broadnax is the City Manager of the City of Austin and is sued in his official capacity. As the City's chief administrative officer, he holds final authority over the administration of the City's extraterritorial-jurisdiction functions under Chapter 42—including the issuance and purported rescission of the ETJ releases at issue.

**RESPONSE:**

Defendant T.C. Broadnax admits he is the City Manager of the City of Austin and Plaintiffs have sued him in his official capacity. Defendants Broadnax denies the remaining allegations contained in Paragraph 7.

8.      Defendant Keith Mars is the Director of the City of Austin Development Services Department and is sued in his official capacity. On information and belief, the Development Services Department administers petitions for release from the City's ETJ under Chapter 42 and is responsible for issuing the March 2026 retraction letters at issue.

Defendants' Answer and Affirmative Defenses

**REPSONSE:**

Defendant Keith Mars admits he is the Director of the City of Austin Development Services Department and Plaintiffs have sued him in his official capacity. Defendant Mars denies the remaining allegations contained in Paragraph 8.

## ASSOCIATIONAL STANDING

9.      POWER has associational standing to sue on behalf of its members under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), and its progeny.

**RESPONSE:**

The allegations contained in Paragraph 9 contain conclusions of law or argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

10.     First, POWER's members have standing to sue in their own right. Each, like Schoenstatt (a POWER member), has suffered a concrete and particularized injury fairly traceable to the City's retraction of their ETJ releases and redressable by the relief sought here.

**RESPONSE:**

The allegations contained in Paragraph 10 contain conclusions of law or argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

11.     Second, the interests POWER seeks to protect are germane to its organizational purpose. POWER was formed specifically to vindicate the statutory and constitutional rights of property owners whose ETJ releases the City has purported to rescind, and the relief sought in this action is precisely the relief POWER exists to obtain.

Defendants' Answer and Affirmative Defenses

**RESPONSE:**

The allegations contained in Paragraph 11 contain conclusions of law or argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

12.    Third, neither the claims asserted nor the relief requested requires the participation of individual members. POWER seeks only declaratory and injunctive relief. The legality of the City's retraction may be determined on a record common to all affected property owners.

**RESPONSE:**

The allegations contained in Paragraph 12 contain conclusions of law or argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

13.    Schoenstatt also has Article III standing in its own right based on the concrete injury described in the Factual Allegations and Injury sections below. Schoenstatt, POWER, and its members are collectively referred to as the "Property Owners."

**RESPONSE:**

The allegations contained in Paragraph 13 contain conclusions of law or argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

## FACTUAL ALLEGATIONS

14.    Chapter 42 of the Texas Local Government Code governs the extraterritorial jurisdictions of Texas municipalities.

**RESPONSE:**

6

Defendants' Answer and Affirmative Defenses

Defendants admit the allegations contained in Paragraph 14.

15.     An ETJ is the unincorporated area adjacent to a city's corporate boundaries within which the city exercises certain planning and regulatory powers.

**RESPONSE:**

Defendants admit the allegations contained in Paragraph 15.

16.     For most of Texas's modern history, ETJ control was a one-way ratchet. Once land fell within a city's ETJ, the city held that regulatory authority indefinitely, and the landowner had no meaningful recourse. The ETJ grew as the municipality's population grew, regardless of whether the affected landowners had any interest in—or connection to—the imposing city.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 16 to the extent the allegations are vague, argumentative, and conclusory, and therefore deny the same.

17.     That changed in 2023. Responding to widespread concern that Texas municipalities were wielding ETJ authority as a tool of regulatory overreach—imposing zoning like restrictions on rural and suburban landowners who received none of the services or voting rights that justify municipal regulation—the Texas Legislature passed Senate Bill 2038. See Act of May 19, 2023, 88th Leg., R.S., 2023 Tex. Sess. Law Serv. ("S.B. 2038") (codified at TEX. LOC. GOV'T CODE §§ 42.101—.105).

**RESPONSE:**

The Defendants admit the Texas Legislature passed Senate Bill 2038 in 2023. The Defendants are without sufficient knowledge to form a belief as to the truth of the

7

Defendants' Answer and Affirmative Defenses

remaining allegations contained in Paragraph 17 to the extent the allegations are vague, argumentative, and conclusory, and therefore deny the same.

18.     S.B. 2038 fundamentally rebalanced the relationship between Texas municipalities and the landowners subject to their ETJ authority, creating a statutory right for landowners to petition for automatic release from a municipality's ETJ.

**RESPONSE:**

The Defendants admit Senate Bill 2038 created a statutory right for landowners to petition to automatic release from a municipality's ETJ subject to threshold eligibility requirements but deny the remaining allegations contained in Paragraph 18.

19.     Under the amended statute, a qualifying landowner may file a petition with the municipality, and if the statutory conditions are met, the area is released mandatorily and automatically. TEX. LOC. GOV'T CODE § 42.105(c).

**RESPONSE:**

To the extent the 'amended statute' referenced in paragraph 19 refers to Subchapter D, the Defendants admit the allegations contained in Paragraph 19 but deny the cited subsection sets forth the entirety of Subchapter D.

20.     Section 42.105(c) requires that "the municipality shall immediately release the area from the municipality's extraterritorial jurisdiction." And if a municipality fails to act within 45 days of receiving the petition, "the area is released by operation of law." Id. § 42.105(d).

**RESPONSE:**

The Defendants admit the accuracy of  the quoted sections of Subchapter D in Paragraph 20 but deny the cited subsections set forth the entirety of Subchapter D.

Defendants' Answer and Affirmative Defenses

21. The Legislature's message was clear: a municipality does not have a vested entitlement to exercise dominion over the properties currently in its ETJ. This jurisdiction is a regulatory tool that must yield to the property rights of the individuals it burdens.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 21 to the extent the allegations are vague, argumentative, and conclusory, and therefore deny the same.

22. The legislative record accompanying S.B. 2038 reflects lawmakers' specific concern that municipalities were using ETJ authority to impose land-use restrictions on property owners who had no voice in city government and no access to city services—regulation without representation. See Bill Analysis, Tex. S.B. 2038, 88th Leg., R.S. (House Comm. on Land & Res. Mgmt. 2023). The ETJ release mechanism was designed to give those landowners a meaningful exit. It is not a formality subject to the City's whims.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 22 to the extent the allegations are vague, argumentative, and conclusory, and therefore deny the same.

23. The qualifications for eligibility to petition for ETJ release are straightforward: be a resident or owner of a majority in value of an area that you wish to remove from an ETJ. See TEX. LOC. GOV'T CODE § 42.102.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The Defendants admit Paragraph 23 identifies certain eligibility requirements of Subchapter D but deny Paragraphs 23 identifies all the eligibility requirements.

24.    There are, however, five narrow exceptions to this blanket right to release. Relevant here, § 42.101(b) provides that an otherwise eligible property may not rely on Chapter 42's automatic-release process if it is "within five miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted" (the "Military Base Exception"). TEX. LOC. GOV'T CODE § 42.101(b).

**RESPONSE:**

The Defendants admit that exceptions to the right to release exist but denies the characterization that the exceptions are narrow and denies the military base exception is properly cited.

25.    Section 43.0117, in turn, defines "military base" to mean "a presently functioning federally owned or operated military installation or facility."

**RESPONSE:**

The Defendants admit the allegations contained in Paragraph 25.

26.    The statute does not define "military installation" or "facility."

**RESPONSE:**

The Defendants admit the allegations contained in Paragraph 26.

27.    The legislative history, however, demonstrates that the Military Base Exception was enacted to protect bases from closure by the federal government.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 27.

10

Defendants' Answer and Affirmative Defenses

28.    In the 1980s, the federal government reinvigorated its decades-old Base Realignment and Closure ("BRAC") process to close and realign military installations nationwide, including in Texas.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 28 and therefore deny the same.

29.    One factor that exposed military sites to closure was close proximity to land uses incompatible with the bases' purpose and mission.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 29 and therefore deny the same.

30.    This concern was front of mind for Texas lawmakers when considering whether to modify the ETJ-release process.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 30 and therefore deny the same.

31.    For instance, when an early draft of the ETJ-removal legislation was introduced, Texas lawmakers filibustered the bill to demand inclusion of the Military Base Exception to protect compatible land use near military bases.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 31 and therefore deny the same.

32.     Specifically, legislators expressed concern that nearby land could be "developed improperly near military bases," which "could heighten their chances of being shuttered in case the federal government undertakes another [BRAC] process." See Cassandra Pollock and Brandon Formby, Texas Sen. Menendez Begins Filibuster of County Annexation Bill, Tex. Tribune (May 28, 2017). They also noted that unfettered ETJ removals "could put military bases at risk of closure" because "[o]ne of the major considerations during the [BRAC] process is compatible land uses near bases." Bill Analysis, Tex. S.B. 6, 85th Leg., R.S. (House Research Org. 2017).

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 32 and therefore deny the same.

33.     The Military Base Exception was thus born of a specific, narrow concern: preventing Texas's military bases from being closed through the BRAC process due to incompatible neighboring land uses.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 33.

34.     As noted, the statute does not define "military installation" or "facility." But federal law does. Under federal law, the term "military installation" refers to "a base, camp, post, station, yard, center, homeport facility for any ship, or other activity under the jurisdiction of the Department of Defense, including any leased facility." 10 U.S.C. § 2687(g)(1) (emphasis added).

**RESPONSE:**

12

Defendants' Answer and Affirmative Defenses

The Defendants admit the allegations contained in Paragraph 34.

35.     The qualifying phrase "under the jurisdiction of the Department of Defense" restricts the definition of "military installation" to those areas subject to the DoD's authority— specifically, its authority to close or realign the site under BRAC.

**RESPONSE:**

The allegations contained in Paragraph 35 contain conclusions regarding statutory interpretation and argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

36.     Reading "facility" in harmony with "military installation," as required by the canons of construction, this term must also be limited to structures subject to DoD jurisdiction.

**RESPONSE:**

The allegations contained in Paragraph 36 contain conclusions regarding statutory interpretation and argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

37.     The phrase "federally owned or operated" modifies "military installation or facility," and a "military installation or facility" is one that the Department of Defense has authority to close or realign—including through the BRAC process. A site that the DoD has no unilateral authority to close or realign is not a "military installation or facility," regardless of who holds title to the underlying land. Mere federal title to the land beneath a facility operated by the State does not make the facility a "federally owned" military installation.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The allegations contained in Paragraph 37 contain conclusions regarding statutory interpretation and argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

38.    Together, the legislative history and canons of construction reveal that "military installation or facility" can only logically be understood to have one meaning: a military site subject to closure by the DoD through the BRAC process. The Property Owners petitioned for, and the City granted, their releases from the City's ETJ.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 38.

39.    The Property Owners are among scores of individuals and entities who petitioned the City for their properties to be released from the City's ETJ under Chapter 42.

**RESPONSE:**

The Defendants admit individuals and entities, including statutory ineligible individuals and entities, submitted petitions under Chapter 42.  The Defendants are without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 39 and therefore deny the same.

40.    They include non-profits who need to expand to meet the needs of those they serve; developers and investors who have committed significant capital to bring housing, job opportunities, and tourism revenue to Travis County; and individual landowners who purchased land outside of the City's limits to live and use their property free from the burdensome restrictions of a city in which they have no voice.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 40 and therefore deny the same.

41.     Each Property Owner's petition for release satisfied all the statutory requirements of Texas Local Government Code §§ 42.101—42.104.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 41.

42.     Eligibility under Chapter 42 is a precondition to satisfying any of the Chapter 42 requirements. Chapter 42's release process expressly does not apply to a property excluded by § 42.101—including a property within five miles of a military base—meaning the property cannot satisfy §§ 42.102 and 42.104 or be released under § 42.105. By confirming that a property owner's petition satisfies the statutory requirements and will be released, the City necessarily determines that Chapter 42 is applicable and no § 42.101 exception precludes the property from release.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 42.

43.     Following its review of each petition, the City issued a written confirmation letter informing the Property Owner that the petition met the statutory requirements identified in Texas Local Government Code §§ 42.102 and 42.104, and that their property would be formally released from the City's ETJ as determined by § 42.105(d).

**RESPONSE:**

The Defendants admit issuing written notification letters that were void and of no effect, as certain properties were statutorily ineligible for release.

15

Defendants' Answer and Affirmative Defenses

44.    Under § 42.105(d), if a petition satisfies all statutory requirements, the property is released by operation of law 45 days after the petition was filed.

RESPONSE:

The Defendants admit Paragraph 44 accurately describes§ 42.105(d) but deny the cited subsections set forth the entirety of Subchapter D.

45.    Each Property Owner's property was, thus, conclusively and formally released from the City's ETJ 45 days after their petition was filed. The City's jurisdiction was relinquished as a matter of law, and the properties came under the exclusive jurisdiction of Travis County.

RESPONSE:

The Defendants deny the allegations contained in Paragraph 45.

46.    The Property Owners reasonably and justifiably relied on the City's written confirmation of release. For periods ranging from months to nearly three years, they operated, planned, invested, and contracted on the understanding that they were outside the City's ETJ.

RESPONSE:

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 46 and therefore deny the same.

47.    On March 13, 2026, without any warning, the City sent letters to those whose properties had been released from the City's ETJ, including each of the Property Owners, informing them that—months or years after being released—the City had determined that the prior confirmation letters "were issued in error and are void and of no force or effect."

RESPONSE:

Defendants' Answer and Affirmative Defenses

The City admits issuing correction letters on March 13, 2026, notifying certain property owners that the property was not eligible for release and prior letters were issued in error and void and of no force or effect.  The Defendants are without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 47 and therefore deny the same.

48.     "Upon further review," the City claimed, it had "determined that [each] property is located within five miles of the boundary of a military base, known as the Bee Caves Armory."

**RESPONSE:**

The Defendants admit Paragraph 48 accurately cites the March 13, 2026, correction letters.

49.     Suddenly deciding that the Military Base Exception applied, the City claimed that each "property is not eligible for release from the City's ETJ. Therefore, the property remains within the boundaries of the City's ETJ, and all applicable municipal authority, regulations, benefits, and obligations remain in effect."

**RESPONSE:**

The Defendants admit Paragraph 49 accurately cites the March 13, 2026, correction letters but denies the remaining allegations and characterizations contained in Paragraph 49.

50.     The City offered no avenue for review or a hearing.

**RESPONSE:**

Paragraph 50 contains conclusions of law or argument that require no answer from the Defendants, but to the extent such allegations require an answer, the City admits Subchapter D provides no avenue for review or a hearing if a property is statutorily

Defendants' Answer and Affirmative Defenses

ineligible for release, and the City did not offer an administrative process for property owners to challenge its determination that their properties were not eligible for release.

51. Indeed, the City has expressly disclaimed any opportunity for review, declaring, in writing, that "no administrative appeal process is available for this determination."

**RESPONSE:**

The City admits the quoted section of Paragraph 51 accurately reflects a portion of correspondence but deny the remaining allegations of Paragraph 51.

52. With no administrative process—formal or informal—to challenge the City's retraction, the Property Owners are left without any avenue for review absent judicial intervention.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 52, to the extent the Plaintiffs and Property Owners may petition the Legislature to amend Chapter 42 of the Texas Local Government Code, as the Legislature previously did in 2025.

53. Since September 2023, approximately 170 properties located within five miles of Bee Caves Armory have been released from the City's ETJ under § 42.105(d).

**RESPONSE:**

The Defendants admit that approximately 170 properties located within five miles of the Bee Caves Armory were statutory ineligible for release under Subchapter D and were the subject of correction letters dated March 13, 2026 notifying certain property owners that the property was not eligible for release and prior letters were issued in error and void and of no force or effect.

Defendants' Answer and Affirmative Defenses

54.     In other words, on approximately 170 separate occasions, the City determined that the Military Base Exception did not apply to properties within five miles of Bee Caves Armory, necessarily meaning that, approximately 170 times, the City determined that Bee Caves Armory was not a "military base," as that term is defined in the statute.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 54.

55.     On information and belief, all owners of the 170 released properties received a retraction letter materially similar to the one received by the Property Owners here.

**RESPONSE:**

The Defendants admit that the City sent out approximately 170 materially similar correction letters dated March 13, 2026 notifying certain property owners, or the property owners' representative(s), that their property was not eligible for release and prior letters were issued in error and void and of no force or effect.

56.     The City's retraction had immediate consequences for the Property Owners.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 56 as phrased.

57.     In addition to depriving each of the Property Owners their constitutional rights, the City's reassertion of jurisdiction immediately subjected them to the City's onerous land-use restrictions, which they had been free from for months or years, and detrimentally interfered with their ability to use their properties.

Defendants' Answer and Affirmative Defenses

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 57.

58.    For instance, educational institutions like St. Michael's Catholic Preparatory School had their expansion projects brought to a halt because the City's regulations, such as impervious cover restrictions, do not allow for the planned expansion.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 58 and therefore deny the same.

59.    Property Owners using their land for development and investment suffered the same result. They acted in direct reliance on the City's written confirmation of their ETJ releases—investing incalculable time, money, and resources into architectural plans, permitting processes, construction contracts, and more. But because of the land-use restrictions the City has purported to reinstate on these properties, the projects cannot move forward, threatening hundreds of millions in hard costs and immeasurable opportunity costs for the community as a whole.

**RESPONSE:**

The Defendants deny it has reinstated land-use restrictions on the properties, as the properties were never eligible for release from the City's ETJ under Subchapter D.  The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 59 and therefore deny the same.

60.    Indeed, the City's efforts to reclaim jurisdiction threaten to destroy any opportunity for Austin's western doorstep to ever develop, to the detriment of Austin itself.

Defendants' Answer and Affirmative Defenses

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 60.

61.    Likewise, numerous Property Owners either had contracts for the sale of their properties or were planning to sell their properties when the City issued its retraction. For those already under contract, the sales are at material risk of cancellation, since the City's land-use restrictions are too burdensome to allow the property to be used for its highest and best use. And for those not yet under contract, the City's retraction substantially reduces their property values and ability to sell. Indeed, some have been informed that the market value of their property has plummeted to approximately one-third of the purchase price since the City's reassertion of jurisdiction because of the land-use limitations the City's regulations impose.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 61 and therefore deny the same.

62.    Most fundamentally, all of the Property Owners—including non- and for- profit businesses and individuals—intentionally purchased land outside of Austin's city limits to increase the enjoyment and use of their properties, free from dense-community regulations.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 62 and therefore deny the same.

Defendants' Answer and Affirmative Defenses

63.     The Property Owners are willing to abide by the less onerous regulations imposed by Travis County and applicable state law. They do not, however, want to be subjected to the City's regulatory authority, whose restrictions were not designed for rural and semi-rural properties.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 63 and therefore deny the same.

64.     That is why they petitioned for release from the ETJ.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 64 and therefore deny the same.

65.     Each Property Owner received written confirmation that their petition satisfied the statutory requirements and that their property would be released by operation of law—some as long ago as late 2023 and early 2024, as soon as release became a statutory possibility.

**RESPONSE:**

Defendants admit that it sent notification letters to certain property owners, or the property owners' representative(s), acknowledging receipt of petition for release, date of receipt, advising petitions met statutory requirements of Sections 42.102 and 42.104, as required by Section 42.105(b), and the area would be released as determined by Section 42.105(d), i.e., by operation of law. The Defendants are without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 65 and therefore deny the same.

Defendants' Answer and Affirmative Defenses

66.     Under the City's reassertion of ETJ authority, they are suddenly re-subjected to land-use restrictions they had been free from for, in some cases, years.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 66.

67.     The Property Owners' concerns about the City's reassertion of authority are not hypothetical or overstated. The same day that the City sent its retraction letters, it began posting violation notices on properties that, minutes before, were outside the City's grasp.

**RESPONSE:**

Defendants admit that one property owner received a notice of violation on March 16, 2026, for the same type of violation it had been previously notified of. The Defendants deny the remaining allegations contained in Paragraph 67.

68.     The City's attempt to retract these releases is itself emblematic of why the Property Owners do not want to be under the City's jurisdiction: the City does not hesitate to overstep its lawful authority and has displayed its unwillingness to admit, much less remedy, its errors. Schoenstatt's experience exemplifies the City's misconduct and its consequences.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 68.

69.     The Schoenstatt Movement of Austin is a nonprofit religious entity and the Austin chapter of an international movement of Catholics striving for the spiritual renewal of their faith in the contemporary world.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 69 and therefore deny the same.

70.     Schoenstatt's core mission is to provide a place of fellowship—a location where people can encounter Christ and reinvigorate their faith.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 70 and therefore deny the same.

71.     To serve its mission, Schoenstatt has developed a 2.5-acre campus centered around the Marian Shrine of Our Lady of Schoenstatt, which has become a place of pilgrimage for the Diocese of Austin and beyond.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 71 and therefore deny the same.

72.     In addition to the Shrine, individuals visit Schoenstatt's campus to attend Mass, participate in retreats, and reflect in Eucharistic adoration.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 72 and therefore deny the same.

73.     Over the years, Schoenstatt has outgrown its existing space.

**RESPONSE:**

24

Defendants' Answer and Affirmative Defenses

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 73 and therefore deny the same.

74.    Due to space constraints, Schoenstatt currently holds Mass outdoors, and when it rains or the weather is otherwise inclement, Schoenstatt is forced to turn parishioners away because its existing covered facilities cannot accommodate the congregation.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 74 and therefore deny the same.

75.    This is a solvable problem for Schoenstatt.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 75 and therefore deny the same.

76.    While its existing developed campus is only 2.5 acres, its property is approximately 17.65 acres, which can be developed to accommodate Schoenstatt's growing community—just not from within the City's ETJ.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 76 and therefore deny the same.

77.    Because of the City's land-use restrictions, including its impervious cover restrictions, Schoenstatt cannot further develop its land within the City's ETJ.

Defendants' Answer and Affirmative Defenses

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 77 and therefore deny the same.

78.    Chapter 42 offered Schoenstatt a path to continue its mission.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 78.

79.    On July 2, 2024, Schoenstatt petitioned for its property to be released from the ETJ, and on August 1, 2024, the City confirmed that its petition met the statutory guidelines for release and would "be formally released from the City of Austin's ETJ as determined by Texas Local Government Code Sec[.] 42.105(d)"—i.e., by operation of law on August 16, 2024.

**RESPONSE:**

The Defendants admit the allegations contained in Paragraph 79 but deny the property was ever eligible for release under Subchapter D.

80.    Based on this release, Schoenstatt hired a design and architectural firm, had conceptual drawings completed, and invested significant resources—both financial and volunteer hours—in an aggressive fundraising campaign.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 80 and therefore deny the same.

Defendants' Answer and Affirmative Defenses

81. Then, on March 13, 2026, the City issued a letter purporting to immediately retract Schoenstatt's release from the ETJ.

**RESPONSE:**

The Defendants admit issuing a March 13, 2026, correction letter to Schoenstatt but deny the remaining allegations contained in Paragraph 81.

82. Schoenstatt was not offered advanced notice of or an opportunity to challenge the City's retraction.

**RESPONSE:**

The Defendants deny that the March 13, 2026 correction letters were a retraction but admit the remaining allegations of Paragraph 82.

83. The City's letter has brought Schoenstatt's development efforts to a standstill and left the movement in an indefinite limbo where its parishioners and visitors, at best, attend Mass under the hot Texas sun and, at worst, are turned away when services cannot be held outdoors.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 83 and therefore deny the same.

84. Schoenstatt's ability to fulfill its religious mission to the Austin diocese depends on the validity of its ETJ release.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 84 and therefore deny the same.

85.    As the Property Owners' experiences demonstrate, the outrageousness of the City's conduct is unquestionable. It is also multifaceted.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 85.

86.    First, the City's determination that the Military Base Exception applies is built on a faulty premise: Bee Caves Armory is not a "military base," as that term is defined in the statute.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 86.

87.    As previously noted, the Military Base Exception exists to protect bases from closure by the federal government via the BRAC process.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 87.

88.    A "military base," as that term is used in the statute, refers to a military site with an active training program that can be closed or realigned by the DoD as part of the BRAC process.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 88.

89.    Bee Caves Armory is a facility located in Travis County, Texas, and used by members of the Texas Army National Guard ("TXANG"), particularly the 71st Troop Command.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The Defendants admit the allegations contained in Paragraph 89.

90.    It is located on federally owned land that is leased to the State of Texas.

**RESPONSE:**

The Defendants admit Bee Caves Armory is located on federally owned land but is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 90 and therefore deny the same.

91.    It is a state facility operated by the TXANG under the authority of the Governor of Texas and the Adjutant General of Texas.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 91 and therefore deny the same.

92.    Under Texas law, the Governor is the Commander-in-Chief of Texas military forces, including the TXANG, and the Adjutant General has "decision making authority on all matters concerning the location and maintenance of military forces and facilities," including "Texas military forces armories." TEX. GOV'T CODE §§ 437.002, 437.054(a).

**RESPONSE:**

The allegations contained in Paragraph 92 contain conclusions of law that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

93.    Bee Caves Armory does not appear on the federal government's list of "military installations." See MilitaryOneSource, https://installations.militaryonesource.mil/view-all (last visited May 20, 2026) (an official website of the U.S. Government). Nor does it appear on Texas's

Defendants' Answer and Affirmative Defenses

list of "military installations." See Active Duty Military Installations, Office of the Texas Governor, https://gov.texas.gov/organization/military/installations (last visited May 20, 2026).

**RESPONSE:**

The Defendants admit the allegations contained in Paragraph 93.

94.    The DoD does not have unilateral authority to close or realign Bee Caves Armory.

**RESPONSE:**

The Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 94 and therefore deny the same.

95.    Federal law expressly provides that TXANG facilities "may not be relocated or withdrawn . . . without the consent of the governor of the State." 10 U.S.C. § 18238.

**RESPONSE:**

The allegations contained in Paragraph 95 contain conclusions of law that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

96.    Likewise, 10 U.S.C. § 2684a expressly distinguishes "military installation" from "State-owned National Guard installation"—further confirming that a Texas Army National Guard armory is categorically distinct from a "military installation."

**RESPONSE:**

The allegations contained in Paragraph 96 contain conclusions of law that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

Defendants' Answer and Affirmative Defenses

97.   Because the DoD cannot unilaterally close or realign Bee Caves Armory, the Armory is not a "military installation or facility" within the meaning of § 43.0117, and it, thus, does not constitute a "military base" for purposes of § 42.101.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 97.

98.   Second, as Texas courts have long recognized, "[a] municipal corporation's powers cease at municipal boundaries and cannot, without plain manifestation of legislative intention, be exercised beyond its limits." Ex parte Ernest, 136 S.W.2d 595, 597 (Tex. Crim. App. 1939).

**RESPONSE:**

The allegations contained in Paragraph 98 contain conclusions of law that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

99.   Relevant here, neither Chapter 42 nor the City's charter grants the City any authority to reconsider, revisit, or void a completed ETJ release. Nor did the City identify any statute, ordinance, or constitutional provision authorizing such action.

**RESPONSE:**

The allegations contained in Paragraph 99 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

100.   To the contrary, once effectuated, a municipality's release of property from its ETJ creates a vested right in operating outside of the City's jurisdiction.

31

Defendants' Answer and Affirmative Defenses

**RESPONSE:**

The allegations contained in Paragraph 100 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

101. The City may not unilaterally revoke such a release to the detriment of those acting in reliance on it, much less can it do so without compliance with the procedural and substantive requirements of state and federal law.

**RESPONSE:**

The allegations contained in Paragraph 101 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

102. The Property Owners justifiably relied on the City's releases to their significant detriment—committing capital, executing contracts, undertaking expansion projects, and making major decisions on the understanding that their properties were outside the City's jurisdiction.

**RESPONSE:**

The allegations contained in Paragraph 102 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

103. The City's attempt to deprive the Property Owners of those vested property interests without due process of law was a procedural ambush.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The allegations contained in Paragraph 103 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

104.    They had no opportunity to receive and review the City's claim, consult counsel, challenge the jurisdictional determination, or seek relief before the City began asserting authority over their properties.

**RESPONSE:**

The Defendants deny asserting any authority it lacked over the "properties." The Defendants are without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 104 and therefore deny the same.

105.    Indeed, the City began issuing notices of violation the same day it issued its retraction letters, demonstrating the City's immediate assertion of regulatory domain without any notice or opportunity to be heard.

**RESPONSE:**

Defendants admit that one property owner received a notice of violation on March 16, 2026, for the same type of violation it had been previously notified of. The Defendants deny the remaining allegations contained in. Defendants deny the remaining allegations contained in Paragraph 105.

106.    In light of the City's retraction letters and the City's threats of enforcement actions (sending notices of violation and demanding immediate compliance with the City's ETJ regulations at the

Defendants' Answer and Affirmative Defenses

risk of significant criminal and civil liability), the threat of further injury to the Property Owners is actual and imminent. The City's actions were taken according to its official policy or custom.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 106.

107. The City's retraction letters and reassertion of ETJ authority constitute the actions of a final policymaker.

**RESPONSE:**

The allegations contained in Paragraph 107 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

108. The officials responsible for the City's decision to rescind the ETJ releases— including those who directed, authorized, or ratified the retraction letters—acted as final policymakers.

**RESPONSE:**

The allegations contained in Paragraph 108 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

109. The City's actions further reflect an official policy or custom of the City.

**RESPONSE:**

The allegations contained in Paragraph 109 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

Defendants' Answer and Affirmative Defenses

110.    The City's rescission of ETJ releases on the asserted ground that properties lie within five miles of Bee Caves Armory was not the isolated act of a rogue employee.

**RESPONSE:**

The allegations contained in Paragraph 110 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

111.    Rather, it reflects a deliberate, institutional determination by City officials acting pursuant to the City's purported (and self-serving) interpretation of Texas Local Government Code § 43.0117—an interpretation that City leadership adopted, communicated in official written correspondence, and has continued to assert in the face of legal challenge.

**RESPONSE:**

The allegations contained in Paragraph 111 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

112.    Indeed, on information and belief, the City has acted on this determination and purported to reassert jurisdiction it ceded approximately 170 times.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 112.

113.    Such deliberate and persistent conduct constitutes an official policy or custom.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The allegations contained in Paragraph 113 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

114.    The City's issuance of materially identical retraction letters to the owners of approximately 170 properties reflects a single, uniform City policy—not the isolated act of any individual employee—and is itself an official policy of the City.

**RESPONSE:**

The allegations contained in Paragraph 114 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

115.    On information and belief, that policy was adopted, directed, authorized, or ratified by the City's final policymakers, including the City Manager and the Director of the Development Services Department, who hold final policymaking authority over the administration of the City's Chapter 42 extraterritorial-jurisdiction functions by delegation under the City Charter and the City's council-manager form of government.

**RESPONSE:**

The allegations contained in Paragraph 115 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

Defendants' Answer and Affirmative Defenses

116.   The City further ratified the policy by continuing to assert its interpretation and right to retract the releases in the face of opposition and by declaring that "[n]o administrative appeal process is available for this determination."

**RESPONSE:**

The allegations contained in Paragraph 116 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

117.   The City's policy or custom of rescinding ETJ releases was the moving force behind the constitutional violations alleged herein.

**RESPONSE:**

The allegations contained in Paragraph 117 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

118.   But for the City's adoption and implementation of that policy or custom, the Property Owners would not have been deprived of their property interests without due process and would not have sustained the injuries described herein.

**RESPONSE:**

The allegations contained in Paragraph 118 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

Defendants' Answer and Affirmative Defenses

**INJURY TO PLAINTIFFS**

119.    By asserting jurisdiction it does not possess and rescinding ETJ releases it had no authority to void, the City has directly and proximately caused the Property Owners significant harm, including but not limited to:

    a.    Depriving the Property Owners of their rights under the U.S. and Texas Constitutions;

    b.    Forcing the Property Owners to endure an unconstitutional process;

    c.    Re-imposing regulatory restrictions that prevent the Property Owners from using their properties for their intended and highest-and-best uses;

    d.    Halting or threatening to halt expansion projects that were undertaken in reliance on the City's confirmed ETJ releases;

    e.    Placing pending property transactions at imminent risk of collapse;

    f.    Subjecting the Property Owners to land-use restrictions that are neither designed nor appropriate for their properties, and to which they are unwilling to submit absent representation in the City's government;

    g.    Depriving the Property Owners of their vested right to operate their properties free from the City's restrictions.

    h.    Creating regulatory uncertainty that impairs the Property Owners' ability to attract donors, investors, buyers, and financing, and to fulfill contractual obligations;

Defendants' Answer and Affirmative Defenses

i.  Forcing the Property Owners to forfeit or place at risk capital, fundraising, architectural and design fees, and other expenditures made in direct reliance on the City's confirmed ETJ releases; and

j.  Forcing the Property Owners to incur legal expenses to vindicate constitutional rights that the City was obligated to respect from the outset.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 119, including each discrete subpart.

## CAUSES OF ACTION

### Count I
### Violation of Procedural Due Process
### (42 U.S.C. § 1983; U.S. CONST. AMEND. XIV)

120. The Property Owners incorporate Paragraphs 1–119 as if fully set forth herein.

**RESPONSE:**

The Defendants incorporate their prior responses to Paragraphs 1-119 as if fully set forth herein.

121. The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving any person of life, liberty, or property without due process of law.

**RESPONSE:**

The Defendants admit the allegations contained in Paragraph 121 but deny a due process violation occurred.

122. At its irreducible minimum, due process requires reasonable notice and a meaningful opportunity to be heard. The City provided neither.

Defendants' Answer and Affirmative Defenses

**RESPONSE:**

The allegations contained in Paragraph 122 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, the City denies a due process violation occurred.

123.   The Property Owners possess constitutionally protected property interests in: (i) their real property and all improvements thereon; (ii) the ETJ releases issued by the City, uponwhich they reasonably and detrimentally relied; and (iii) the vested right to develop and use their properties free from the City's ETJ authority, created by the City's own written confirmation letters and the subsequent release of the properties by operation of law under Texas Local Government Code § 42.105.

**RESPONSE:**

The allegations contained in Paragraph 123 contain conclusions of law that require no answer from the Defendants, but to the extent such allegations require an answer, the City denies it deprived the Property Owners of constitutionally protected property interests.

124.   Each of these is a property interest protected by the Fourteenth Amendment.

**RESPONSE:**

The allegations contained in Paragraph 124 contain conclusions of law that require no answer from the Defendants, but to the extent such allegations require an answer, the City denies it deprived the Property Owners of a property interest protected by the Fourteenth Amendment.

Defendants' Answer and Affirmative Defenses

125.    These interests further arise from Chapter 42's mandatory, non-discretionary command that a qualifying area "shall" be released "immediately" and "is released by operation of law." TEX. LOC. GOV'T CODE § 42.105(c)–(d). They do not depend on the City's discretion or grace. The City's written confirmations acknowledged and affirmed a release that the statute itself compelled. At a minimum, where the City now contends the properties were ineligible, that disputed eligibility determination is precisely the kind of question that due process required the City to resolve through notice and a hearing before acting on its own conclusion.

**RESPONSE:**

The allegations contained in Paragraph 125 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

126.    The City, acting under color of state law, unilaterally rescinded the ETJ releases and reasserted regulatory authority over the Property Owners' land—thereby depriving them of their protected property interests—without notice or any opportunity to be heard.

**RESPONSE:**

The allegations contained in Paragraph 126 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

127.    The City did not initiate an administrative proceeding. It did not issue a notice of proposed action. It did not afford the Property Owners a single day to respond. It sent a letter declaring the releases void and began asserting regulatory authority the same day.

41

Defendants' Answer and Affirmative Defenses

**RESPONSE:**

The allegations contained in Paragraph 127 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

128.    The timing of the City's actions is constitutionally significant. On the same day the City mailed its letters purporting to void the ETJ releases, it began reasserting regulatory authority over the properties, and it began sending violation notices.

**RESPONSE:**

The Defendants admit it issued one violation notice but deny the remaining allegations contained in Paragraph 128, including the conclusions of law and legal argument that require no answer from the Defendants.

129.    The Property Owners had no opportunity—not a single day—to receive and review the City's claim, consult counsel, challenge the jurisdictional determination, or seek injunctive relief before the deprivation took effect. Simultaneous deprivation and notice is no notice at all.

**RESPONSE:**

Defendants deny any deprivation occurred. The Defendants are without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 129 and therefore deny the same, including the conclusions of law and legal argument that require no answer from the Defendants.

130.    The City's failure to provide pre-deprivation process cannot be excused by practical necessity or emergency. Pre-deprivation process was entirely feasible: the City had ample time to

Defendants' Answer and Affirmative Defenses

notify the Property Owners of its changed interpretation of the Military Base Exception and to provide a meaningful opportunity to contest that interpretation before acting.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 130.

131. The City made a deliberate institutional decision to act unilaterally and without process—it was not facing an emergency or a situation where notice was a practical impossibility.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 131.

132. Because the City's retraction was carried out pursuant to its established policy and by officials with authority to act, and not as a random or unauthorized act of a subordinate employee, pre-deprivation process was both required and feasible, and no post-deprivation state remedy excuses the City's failure to provide it.

**RESPONSE:**

The allegations contained in Paragraph 132 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

133. Even if the City's eligibility determination were genuinely disputed, the City was constituStionally required to provide notice and an opportunity to be heard before unilaterally resolving that dispute against the Property Owners and depriving them of their interests.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The allegations contained in Paragraph 133 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

134. As a direct and proximate result of the City's procedural due process violations, the Property Owners have suffered the harms set forth in Paragraph 119 above and are entitled to declaratory and injunctive relief and, on behalf of Schoenstatt, to nominal damages.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 134.

135. Unless the City is enjoined from asserting ETJ authority over the Property Owners' properties, they will suffer continuing and irreparable harm.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 135.

### Count II

**Violation of Substantive Due Process**
**(42 U.S.C. § 1983; U.S. CONST. AMEND. XIV)**

136. The Property Owners incorporate Paragraphs 1–119 as if fully set forth herein.

**RESPONSE:**

The Defendants incorporate their prior responses to Paragraphs 1-119 as if fully set forth herein.

137. The substantive component of the Due Process Clause protects against arbitrary, conscience-shocking deprivations of property.

Defendants' Answer and Affirmative Defenses

**RESPONSE:**

The allegations contained in Paragraph 137 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent an answer is required, the Defendants deny any violation of Plaintiffs' substantive due process rights.

138.    Government conduct that is arbitrary, irrational, or unjustifiable in light of the circumstances—or that reflects a deliberate abuse of power—violates substantive due process.

**RESPONSE:**

The allegations contained in Paragraph 138 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent an answer is required, the Defendants deny any violation of Plaintiffs' substantive due process rights.

139.    The Property Owners possess fundamental property interests in their ETJ releases and in the vested right to develop and use their properties free from the City's restrictions. Those interests are protected by the substantive component of the Due Process Clause.

**RESPONSE:**

The allegations contained in Paragraph 139 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, the Defendants deny any violation of Plaintiffs' or the Property Owners' substantive due process rights.

140.    The City's conduct shocks the conscience and constitutes an arbitrary and unjustifiable deprivation of Plaintiffs' protected property interests.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The allegations contained in Paragraph 140 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

141.    First, the City made approximately 170 independent, official determinations that properties within five miles of Bee Caves Armory were eligible for ETJ release—expressly confirming in writing that the statutory conditions were met. The City then abruptly reversed course without notice, without legal authority, and without any changed circumstance to justify the reversal. A government reversal of its own prior official determinations, made in the face of substantial reliance, is the paradigmatic case of arbitrary government action.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 141.

142.    Second, the City's reversal is predicated on a legally untenable interpretation of the Military Base Exception—one the City itself had implicitly and repeatedly rejected across approximately 170 prior releases—that is unsupportable under the text, history, and purpose of Texas Local Government Code §§ 42.101 and 43.0117. Government action that has no lawful basis is, by definition, arbitrary.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 142.

143.    Third, the City's reversal was timed to maximum prejudice. The City waited until, in some cases, years after the Property Owners had organized their religious, educational, commercial, and personal affairs in reliance on the releases to reconsider its decision and purport to void the

Defendants' Answer and Affirmative Defenses

releases. The City's conduct was not merely arbitrary; it was devastating in its consequences and, given its timing, impossible to characterize as anything other than a conscience shocking deprivation.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 143.

144.    The City's conduct, therefore, constitutes a deprivation of the Property Owners' constitutionally protected property interests without due process of law, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 144.

145.    Further, a government body that acts in complete excess of its lawful authority— that has no power whatsoever to take the action it took—cannot satisfy even rational basis review. There is no legitimate governmental interest served by an ultra vires action.

**RESPONSE:**

The allegations contained in Paragraph 145 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

146.    The City had no authority to rescind the Property Owners' ETJ releases. No statute, ordinance, or provision of the City's charter grants the power to void an ETJ release.

**RESPONSE:**

47

Defendants' Answer and Affirmative Defenses

The Defendants deny the allegations contained in Paragraph 146.

147.    As a direct and proximate result of the City's substantive due process violations, the Property Owners have suffered the harms set forth in Paragraph 119 and are entitled to declaratory and injunctive relief and, on behalf of Schoenstatt, to nominal damages.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 147.

148.    Unless the City is enjoined from continuing to assert ETJ authority over the Property Owners' properties, they will suffer continuing and irreparable harm.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 148.

## Count III

### Violation of Due Course of Law
### (TEX. CONST. art. I, § 19)

149.    The Property Owners incorporate Paragraphs 1–119 as if fully set forth herein.

**RESPONSE:**

The Defendants incorporate their prior responses to Paragraphs 1-119 as if fully set forth herein.

150.    Article I, § 19 of the Texas Constitution provides that no citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The Defendants admit Paragraph 150 accurately quotes Article I, § 19 of the Texas Constitution.

151. The Property Owners possess constitutionally protected property interests under the Texas Constitution, including: (i) their real property and all improvements thereon; (ii) the ETJ releases issued by the City, upon which Plaintiffs reasonably and detrimentally relied; and (iii) the vested right to develop and use their properties free from the City's ETJ authority, created by the City's own written releases and confirmed by operation of law.

**RESPONSE:**

The allegations contained in Paragraph 151 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, the Defendants deny it violated any protected property rights under the Texas Constitution.

152. The City, acting without lawful authority, rescinded its release of jurisdiction and reasserted ETJ regulatory authority over the Property Owners' properties—thereby depriving them of their protected property interests—without prior notice or any opportunity to be heard.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 152.

153. This deprivation was accomplished by nothing more than a letter that, according to the City, took immediate effect.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 153.

Defendants' Answer and Affirmative Defenses

154.   The Texas Constitution imposes a robust requirement of procedural regularity before the government may deprive a person of a protected property interest.

**RESPONSE:**

The allegations contained in Paragraph 154 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, the Defendants deny it violated any protected property rights under the Texas Constitution.

155.   The City provided none of the processes that Texas law requires.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 155.

156.   The City's conduct was also arbitrary, capricious, and without rational basis under the substantive component of Article I, § 19.

**RESPONSE:**

The allegations contained in Paragraph 156 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

157.   Between 2023 and early 2026, the City released approximately 170 properties within five miles of Bee Caves Armory from its ETJ—making 170 independent determinations that such properties were eligible for release.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The Defendants admit that it sent notification letters to certain property owners, or the property owners' representative(s), acknowledging receipt of petition for release, date of receipt, advising petitions met statutory requirements of Sections 42.102 and 42.104, as required by Section 42.105(b), and the area would be released as determined by Section 42.105(d), i.e., by operation of law. The Defendants deny the remaining allegations contained in Paragraph 157.

158.    It then abruptly reversed course without notice or legal authority and began issuing notices of violation the same day.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 158.

159.    That reversal, predicated on a legally erroneous interpretation of the Military Base Exception that the City itself had repeatedly rejected through its own conduct, shocks the conscience and cannot survive even rational basis review.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 159.

160.    As a direct and proximate result of the City's violations, the property Owners have suffered the harms set forth in Paragraph 119 and are entitled to declaratory and injunctive relief.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 160.

161.    Unless the City is enjoined from continuing to exercise jurisdiction over the Property Owners' properties, they will suffer continuing and irreparable harm.

51

Defendants' Answer and Affirmative Defenses

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 161.

### Count IV

### Declaratory Judgment: Plaintiffs' ETJ Releases are Valid and in Effect
### ( 28 U.S.C. §§ 2201—2202; TEX. LOC. GOV'T CODE §§ 42.101—42.105)

162.    The Property Owners incorporate Paragraphs 1–119 as if fully set forth herein.

**RESPONSE:**

The Defendants incorporate their prior responses to Paragraphs 1-119 as if fully set forth herein.

163.    An actual controversy exists between the Property Owners and the City as to whether the ETJ releases are valid and in full force and effect.

**RESPONSE:**

The allegations contained in Paragraph 163 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

164.    Each Property Owner satisfied all conditions for ETJ release under Texas Local Government Code §§ 42.101—42.104. Each Property Owner's property was, therefore, legally released from the City's ETJ.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 164.

Defendants' Answer and Affirmative Defenses

165.    Bee Caves Armory does not constitute a "military base" within the meaning of §§ 43.0117 and 42.101 because it is a Texas Army National Guard facility not subject to unilateral closure or realignment by the DoD—either through the BRAC process or otherwise.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 165.

166.    The Property Owners are, therefore, entitled to a declaration that: (a) their ETJ releases are valid, lawful, and remain in effect; (b) the City's attempts to rescind those releases are void and of no legal effect; and (c) their properties are not within the City's ETJ.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 166.

**Count V**

**Declaratory Judgment: The City's Ultra Vires Acts are Void**
**(28 U.S.C. §§ 2201—2202; TEX. LOC. GOV'T CODE §§ 42.101—42.105)**

167.    The Property Owners incorporate Paragraphs 1–119 as if fully set forth herein.

**RESPONSE:**

The Defendants incorporate their prior responses to Paragraphs 1-119 as if fully set forth herein.

168.    Home-rule cities such as Austin derive their powers of local self-government from the Texas Constitution, but those powers are limited by general laws enacted by the Legislature.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The allegations contained in Paragraph 168 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent an answer is required the Defendants admit Paragraph 168 is an accurate, but incomplete, proposition of law.

169. Where the Legislature has enacted a comprehensive statutory scheme governing a particular subject, a home-rule city may not act beyond the scope of, or inconsistent with, that scheme.

**RESPONSE:**

The allegations contained in Paragraph 169 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent an answer is required the Defendants admit Paragraph 169 is an accurate, but incomplete, proposition of law but deny the Defendants acted in a way that was inconsistent with a statutory scheme.

170. Further, municipalities are expressly prohibited from exercising power beyond their municipal boundaries absent specific legislation authorizing such action.

**RESPONSE:**

The allegations contained in Paragraph 170 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent an answer is required the Defendants admit Paragraph 170 as an accurate, but incomplete, proposition of law but deny the Defendants acted in an expressly prohibited manner.

171. Chapter 42 of the Texas Local Government Code is a general law that regulates ETJ releases and prescribes the procedures by which releases are granted and take effect.

**RESPONSE:**

Defendants' Answer and Affirmative Defenses

The allegations contained in Paragraph 171 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent an answer is required the Defendants admit Paragraph 171 is an accurate, but incomplete, proposition of law.

172.    Nothing in Chapter 42—or in the City's charter—authorizes a municipality to reconsider, rescind, or void a completed ETJ release for any reason.

**RESPONSE:**

The allegations contained in Paragraph 172 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

173.    To the contrary, once an area is released from an ETJ, regulation of that land returns to the county. The City has no statutory authority to reconsider, rescind, or void an ETJ release once it has taken effect.

**RESPONSE:**

The allegations contained in Paragraph 173 contain conclusions of law and legal argument that require no answer from the Defendants, but to the extent such allegations require an answer, they are denied.

174.    The City's attempts to rescind the Property Owners' releases and its continued assertion of ETJ authority over the Property Owners' properties, therefore, constitute acts in excess of the City's legal authority—i.e., ultra vires conduct.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 174.

Defendants' Answer and Affirmative Defenses

175.   As the City's chief administrative officer, City Manager T.C. Broadnax holds final authority over the administration of the City's extraterritorial-jurisdiction functions under Chapter 42—including the issuance and purported rescission of the ETJ releases at issue.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 175.

176.   As the Director of the City of Austin Development Services Department, Keith Mars is responsible for issuing the March 2026 retraction letters without authority.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 176.

177.   Acting in their official capacities, Mr. Broadnax and Mr. Mars effectuated the City's ultra vires actions.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 177.

178.   The Property Owners are entitled to a declaration that the City's purported rescission of their ETJ releases was ultra vires, void ab initio, and without legal force or effect.

**RESPONSE:**

The Defendants deny the allegations contained in Paragraph 178.

## AFFIRMATIVE DEFENSES

1.   Plaintiffs' Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

Defendants' Answer and Affirmative Defenses

2.      Plaintiffs do not possess a constitutionally protected property interest in the ETJ releases at issue. Bee Caves Armory is located within five miles of the properties identified in the Complaint, rendering those properties ineligible for release from the City's extraterritorial jurisdiction under Chapter 42 of the Texas Local Government Code. Because Chapter 42 does not authorize release of ineligible property, no valid release ever issued as a matter of law, and any written confirmation to the contrary was ultra vires and could not, and did not, create a legitimate claim of entitlement or vested property right protected by the Fourteenth Amendment or Article I, Section 19 of the Texas Constitution.

3.      Any purported 'vested right' Plaintiffs claim to operate outside the City's extraterritorial jurisdiction is not a right recognized or created by Chapter 42 of the Texas Local Government Code, where, as here, the properties at issue were never statutorily eligible for release in the first instance

4.      The City is a governmental entity entitled to governmental immunity from suit and from liability, except to the extent it is waived or it otherwise does not apply.

5.      The original notification letters were issued without lawful authority and in excess of the City's statutory authority under Chapter 42 and are therefore void.

6.      Defendants' conduct was not arbitrary, irrational, or conscience-shocking. Defendants' actions were undertaken to correct the City's administration of Chapter 42 of the Texas Local Government Code, which reflects a legitimate governmental interest sufficient to satisfy rational basis review, and Plaintiffs cannot establish the egregious, conscience-shocking conduct required to sustain a substantive due process claim.

Defendants' Answer and Affirmative Defenses

7.      Plaintiffs' Section 1983 claims fail to the extent they cannot establish that any deprivation of a constitutional right was caused by an official policy, custom, or practice, or by a final policymaker's deliberate choice among alternatives.

8.      To the extent Plaintiffs' claims against Defendants Broadnax and Mars are construed to seek any form of individual liability or relief beyond prospective official-capacity relief, such Defendants assert qualified immunity on the ground that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable official in their position would have known.

9.      POWER lacks associational standing to assert claims on behalf of its members.

10.     Plaintiffs have failed to join as parties the owners of the approximately 170 properties referenced in the Complaint whose interests are directly implicated by the relief Plaintiffs seek. Complete relief cannot be accorded among existing parties, and adjudication in the absence of such parties may impair or impede their ability to protect their interests or subject Defendants to a substantial risk of inconsistent obligations.

11.     Plaintiffs are not entitled to the declaratory or injunctive relief requested because Plaintiffs cannot demonstrate irreparable harm, a likelihood of success on the merits, or that the balance of equities and public interest favor the relief requested.

12.     Defendants reserve the right to assert additional affirmative defenses throughout the development of this case.

Defendants' Answer and Affirmative Defenses

**DEFENDANTS' PRAYER**

Defendants pray that all relief requested by Plaintiffs be denied, that the Court dismiss this case with prejudice, and that the Court award Defendants costs and attorney's fees, and any additional relief to which it is entitled under law or equity.

RESPECTFULLY SUBMITTED,

DEBORAH THOMAS, CITY ATTORNEY
VASU BEHARA, CHIEF OF LITIGATION


 */s/.* Luke McHenry

Luke McHenry
Assistant City Attorney
State Bar No. 24057993
Luke.mchenry@austintexas.gov
Hannah M. Vahl
Assistant City Attorney
State Bar No. 24082377
hannah.vahl@austintexas.gov
Austin City Attorney's Office
Telephone (512) 974-2401
Facsimile: (512) 974-1311


**ATTORNEYS FOR DEFENDANT
CITY OF AUSTIN**

Defendants' Answer and Affirmative Defenses

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th of July, I electronically filed and served the above and foregoing document to:


**Via CM/ECF:**

Bill Cobb
Texas Bar No. 00796372
Alexa L. Gervasi
Texas Bar No. 24147091
COBB & GERVASI, PLLC
1250 S. Capital of Texas Hwy
Building 3, Suite 400
Austin, Texas 78746
(512) 955-5209
bill@cobbgervasi.com
alexa@cobbgervasi.com

**ATTORNEYS FOR PLAINTIFF**


<u>/s/ Luke McHenry</u>
Luke McHenry

Defendants' Answer and Affirmative Defenses