IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PROPERTY OWNERS WITHSTANDING ETJ RETRACTIONS, et al., | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | 1:26-CV-1518-RP |
| CITY OF AUSTIN, et al., | § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is the Motion for Preliminary Injunction ("PI Motion"), (Dkt. 6), filed by

Plaintiffs Property Owners Withstanding ETJ Retractions ("POWER") & The Schoenstatt

Movement of Austin (together, "Plaintiffs"). Defendants the City of Austin; T.C. Broadnax, in his

official capacity as City Manager; and Keith Mars, in his official capacity as Director of

Development Services Department (together, "the City") filed a Response, (Dkt. 10), to which

Plaintiffs filed a Reply, (Dkt. 11). The Court held a hearing on Plaintiff's PI Motion on July 14, 2026.

(Dkt. 12). Having considered the briefing, the evidence, and the relevant law, the Court will grant the

motion.

## I. BACKGROUND

In 2023, the Texas State Legislature ("the Legislature") passed S.B. 2038, which amended

Chapter 42 of the Texas Local Government Code to create a statutory right for landowners to

petition for automatic release from a municipality's extraterritorial jurisdiction ("ETJ"), with a few

exceptions. Tex. Loc. Gov't Code §§ 42.101–.105 (Subchapter D). This statutory right creates a

systematic process by which landowners, if they follow the procedures correctly, can successfully

petition for their properties to be released from the City's ETJ. *Id.* § 42.105(c)-(d).[1] The City

purports that no component of this process "assigns a municipality any duty to investigate, certify,

or verify the applicability of exemptions before acting on a release petition." (Resp., Dkt. 10, at 4).

S.B. 2038 includes a few exceptions, including the exception at issue here, the "Military Base

Exception," § 42.101(1). (PI Mot., Dkt. 6, at 7). This exception provides that a property is not

entitled to rely on S.B. 2038's automatic-release process if it is "within five miles of the boundary of

a military base, as defined by Section 43.0117, at which an active training program is conducted."

Tex. Loc. Gov't Code § 42.101(1). Section 43.0117 defines "military base" as "a presently

functioning federally owned or operated military installation or facility." *Id.* § 43.0117(a).

Between 2023 and early 2026, the City released approximately 170 properties located within

five miles of the Bee Caves Armory[2] from its ETJ by issuing letters stating that the properties met

the statutory requirements and therefore would be formally released from the City's ETJ as required

by § 42.105(d)—i.e., by operation of law, forty-five days after the petition was filed. (Gervasi Decl.,

Dkt. 6-1, at 3; Brady Decl., Dkt. 10, at 53–54). Once each property was released from the City's ETJ,

it was brought under the exclusive regulatory authority of Travis County. (Ford Decl., Dkt. 6-1, at

33). Then, in March 2026, the City declared those 170 releases "void" and announced that the

properties were back within the City's ETJ and under its regulatory control. (Gervasi Decl., Dkt. 6-1,

at 4; Brady Decl., Dkt. 10, at 54–55). In the City's letters to those property owners ("the March

Letters"), the City reasoned that, upon its further review, because the Bee Caves Armory is a military

base, the previously released properties fall under the Military Base Exception and therefore the

releases were "issued in error and are void and of no force or effect." (*See* Examples of March

---

[1] If the statutory conditions are met, "the municipality shall immediately release the area from the municipality's extraterritorial jurisdiction," and if the municipality fails to act within forty-five days, "the area is released by operation of law." Tex. Local Gov't Code § 42.105(d).

[2] The Bee Caves Armory is an active Texas Army National Guard training site. (Resp., Dkt. 10, at 4).

Letters, Ex. C to Resp., Dkt. 10, at 61–69). The City informed the affected property owners that there was no administrative appeal process available under this statutory scheme, which Plaintiffs do not dispute is true. (Gervasi Decl., Dkt. 6-1, at 4). The City explains that it was prompted to investigate this issue and eventually issue these letters due to neighbors' safety concerns about a billboard being constructed within five miles of the Bee Caves Armory. (Resp., Dkt. 10, at 6–7). The City deemed that area to be within the City's ETJ, and billboards are not allowed within the City's ETJ. (*Id.* at 6).

Plaintiffs allege that since March 2026 the City has been posting notices informing landowners of the previously released properties that they are in violation of the City's ETJ regulations, at the risk of civil and criminal liability. (Gervasi Decl., Dkt. 6-1, at 4). The City reports that since issuing its March Letters, the City has only subjected the Waldrop Trust (a member of POWER) to any regulatory enforcement. (McHenry Decl., Dkt 10, at 28). Yet, Plaintiffs contend that across their affected properties, "expansion projects [have] came to a halt due to City restrictions; developers and investors who have invested heavily in architectural plans, permitting, construction contracts, and building loans in reliance on being outside of the ETJ are at risk of losing hundreds of millions of dollars in hard costs; owners with pending sales face cancellation; and those desiring to sell have seen market values fall by approximately two-thirds." (Ford Decl., Dkt. 6-1, at 33–34).

On June 5, 2026, Plaintiffs filed their Complaint in this case. (Dkt. 1). On June 11, 2026, Plaintiffs filed their PI Motion, asking the Court to enjoin the City from enforcing its March Letters—which declared the 170 properties at issue as back within the City's ETJ and therefore its regulatory control—during the pendency of this action. (PI Mot., Dkt. 6, at 22). Plaintiffs seek a preliminary injunction that applies to all of the released properties and their owners, whether or not

the owner is a named party to this action or a member of a named party, "so that complete relief is afforded without the need for piecemeal enforcement." (Proposed Order, Dkt. 6-3, at 2).

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy requiring a movant to "unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050–52 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

## III. DISCUSSION

### A. The City's Standing Arguments

The City argues that POWER has not properly pled associational standing.[3] (Resp., Dkt. 10, at 9–12). The Fifth Circuit requires that to establish associational standing, a plaintiff must satisfy three elements: "(1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006). Ordinarily, the first element is met by identifying a member of the organization who has standing. *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010). The Court finds that POWER has sufficiently alleged associational standing.

---

[3] The City does not dispute Plaintiff Schoenstatt's Article III standing.

First, each of POWER's members owns properties subjected to the March Letters and therefore could independently establish that they suffered an injury-in-fact. (Compl., Dkt. 1, at 2). And, POWER included one of its individual members as a Plaintiff, the Schoenstatt Movement, (Reply, Dkt. 11, at 6), despite the City asserting otherwise, (Resp., Dkt. 10, at 9). Schoenstatt is a "Texas nonprofit religious organization and the Austin chapter of an international movement of Catholics dedicated to the spiritual renewal of their faith." (Pinto Decl., Dkt. 6-1, at 37). Schoenstatt alleges that because of the City's ETJ restrictions, it cannot obtain the permits it needs to develop and accommodate its growing community. (*Id.* at 38). Schoenstatt, relying on its release from the City's ETJ, invested significant resources to commence a development project to accommodate its growing community. (*Id.* at 39). Now, Schoenstatt contends that the City's reassertion of its ETJ has caused Schoenstatt's development project to reach a standstill. (*Id.*). Plaintiffs additionally included a representative sample of the March Letters sent to members of POWER—thereby specifically referencing additional members of POWER. (Reply, Dkt. 11, at 6).

Second, Plaintiffs assert that challenging the City's March Letters is germane to POWER's purpose to "vindicate the statutory and constitutional rights of property owners whose properties were released from the City's [ETJ] under [S.B. 2038] and whose releases the City has purported to rescind." (Ford Decl., Dkt. 6-1, at 32). Third, the relief Plaintiffs request does not require the participation of individual members, because POWER seeks only declaratory and injunctive relief that is the same for all members. (Reply, Dkt. 11, at 7). Indeed, "the participation of individual association members is not normally necessary when an association seeks prospective or injunctive relief for its members," as Plaintiffs do here. *Nat'l Religious Broadcasters v. Fed. Commc'ns Comm'n*, 138 F.4th 282, 290–91 (5th Cir. 2025) (citation and quotations omitted). Therefore, the Court concludes that POWER has properly pled associational standing.

### B. The City's Abstention Arguments

The City argues that the Court must abstain from deciding the merits of Plaintiffs' PI Motion under either *Pullman* or *Burford* abstention. (Resp., Dkt. 10, at 20–22). Under *Pullman* abstention, a federal court should abstain from exercising its jurisdiction "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). For *Pullman* abstention to be appropriate, the case must involve (1) a federal constitutional challenge to state action; and (2) an unclear issue of state law that, if resolved, would make it unnecessary for the court to rule on the federal constitutional question. *Nationwide Mut. Ins. v. Unauthorized Practice of L. Comm.*, 283 F.3d 650, 653 (5th Cir. 2002).

The City suggests that this case is an appropriate candidate for *Pullman* abstention because (a) it involves a new state law that Texas state courts are already being asked to construe in litigation challenging the constitutionality of S.B. 2038 and (b) Plaintiffs' federal claims depend entirely on the construction of state law. (Resp., Dkt. 10, at 21). Plaintiffs respond that because their request for a preliminary injunction does not concern whether the City's interpretation of "military base" is correct, the City's alleged state law interpretation argument does not affect the federal constitutional question at issue and therefore *Pullman* abstention is not warranted. (Reply, Dkt. 11, at 14). Rather, Plaintiffs are moving for a preliminary injunction on solely on the merits of their procedural due process violation claim and their claim that the City acted *ultra vires*—neither of which depend on or require the Court to interpret the meaning of the Military Base Exception. (PI Mot., Dkt. 6, at 8 n.8).

In deciding whether to abstain under *Burford*, courts are to consider (1) whether the plaintiff is raising state or federal claims; (2) whether the case involves unsettled state law or detailed local facts; (3) the importance of the state's interest in the litigation; (4) the state's need for a coherent policy in the area; and (5) whether there is a special state forum for judicial review. *ERCOT v. Just*

*Energy Tex., L.P.*, 57 F.4th 241, 249 (5th Cir. 2023). The City contends that abstention is also warranted under *Burford* because this case involves the "hyperlocal fact" of whether the Bee Caves Armory is a "military base" under S.B. 2038 and that issue is "bound up in significant state policy issues about the ability of a property owner to leave the ETJ voluntarily, an area that the Legislature is actively legislating in." (Resp., Dkt. 10, at 22). Plaintiffs respond that *Burford* abstention requires the "existence of a state administrative proceeding to which the federal court could defer," which does not exist here. (Reply, Dkt. 11, at 14 (citing *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 242 (5th Cir. 1998)). Plaintiffs contend that the ongoing state lawsuits challenging S.B. 2038 do not mandate abstention. (*Id.*).

The Supreme Court has held that where the plaintiffs' assertion is that the defendants "have been and are depriving them of rights protected by the Fourteenth Amendment[,] [i]t is immaterial whether [the defendants'] conduct is legal or illegal as a matter of state law" and that such claims "are entitled to be adjudicated in the federal courts." *McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 674 (1963). Therefore, based on the PI Motion's focus on the alleged procedural due process violation at issue, as well as the City's allegedly *ultra vires* actions, the Court will not abstain under either referenced doctrine. *See also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (finding that abstention is an "extraordinary and narrow exception," not the rule, and that the federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them). As referenced repeatedly at the Court's hearing on Plaintiffs' PI Motion, the Court's interpretation of the Military Base Exception is not necessary for its analysis of the City's alleged due process violation and *ultra vires* acts. Thus, while the state of Texas undoubtedly has an interest in the interpretation and effectuation of its Legislature's statutes, because Plaintiffs seek here

to vindicate their constitutional rights, Plaintiffs are entitled to have those rights adjudicated in the federal courts. *See Just Energy Tex., L.P.*, 57 F.4th at 249.[4]

## B. Plaintiffs' Preliminary Injunction Motion

Having considered the City's threshold arguments as to standing and abstention, the Court turns the merits of Plaintiffs' PI motion. Plaintiffs move for a preliminary injunction on their procedural due process violation claim (Count I of the Complaint) and their claim that the City acted *ultra vires* (Count V). (PI Mot., Dkt. 6, at 8 n.8). As described in detail in following section, the Court finds that Plaintiffs have met their burden on all four factors for seeking a preliminary injunction. *See Winter*, 555 U.S. at 20. Therefore, the Court will grant Plaintiffs' PI Motion.

## 1. Likelihood of Success on the Merits

### a. Procedural Due Process Violation

A prima facie procedural due process claim requires two showings: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). Under Texas law, property is "the unrestricted right of use, enjoyment and disposal of a thing." *In re Kelso*, 196 B.R. 363, 369 (Bankr. N.D. Tex. 1996); *see also Simi Inv. Co. v. Harris County*, 236 F.3d 240, 249–50 (5th Cir. 2000). Both federal and Texas courts have also recognized that a property interest exists where the plaintiff "has a legitimate claim of entitlement that is created, supported, or secured by rules or mutually explicit understandings." *City of Houston v. Carlson*, 393 S.W.3d 350, 357 (Tex. App. 2012); *see also Bowlby v. City of Aberdeen*, 681 F.3d 215, 219–20 (5th Cir. 2012) (stating that government-conferred "[p]rivileges . . . qualify as property interests for purposes of procedural due process").

---

[4] At the hearing on Plaintiffs' PI Motion, the City also informed the Court that it suspects the Legislature will amend S.B. 2038 in the coming term to resolve the issue at bar, which the City argued favors abstention. (Hearing Tr. 39:2–6). The Court finds that this speculation does not materially alter its abstention analysis and its conclusion that Plaintiffs are entitled to have their federal constitutional rights adjudicated in the federal courts.

Plaintiffs argue that they possess three specific protected interests the City deprived them of without any process, none of which depend on the meaning of "military base": (i) the "unrestricted right of use, enjoyment and disposal" of their real property, which the property owners possessed between the time of their releases and the March Letters; (ii) the statutorily protected right to remain outside the City's ETJ once released; and (iii) the vested right to develop and use their land free of the City's ETJ restrictions—created by the City's written confirmation that the properties were released and its years-long treatment of the properties as released. (PI Mot., Dkt. 6, at 14–15). The City rebuts that Plaintiffs have no property interest in being released from the City's ETJ because the properties were never eligible for release; thus, the automatic-release statutory process has always been inapplicable to the released properties, and the original release letters were void. (Resp., Dkt. 10, at 16).

The parties provide various authorities to bolster their contrary arguments on this point, and taking that authority into account, the Court finds that the relevant authority instructs that Plaintiffs do possess protected property interests in their properties. First, and most obviously, Plaintiffs have a property interest in their real properties, which are located within five miles of the Bee Caves Armory.[5] "Property interests protected by the procedural due process clause include, at the very least, ownership of real estate, chattels, and money." *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 822 (5th Cir. 2007) (citations omitted). Next, the Court is also persuaded that Plaintiffs have a property interest in their land via the privilege the City's ETJ-release conferred to Plaintiffs. Government-conferred "[p]rivileges, licenses, certificates, and franchises . . . qualify as property interests for purposes of procedural due process." *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n,* 547 F.2d 938, 941 (5th Cir. 1977). *See also Bowlby*, 681 F.3d at 220 (holding that a business

---

[5] The Court agrees with Plaintiffs' footnote on this point that municipalities may of course,regulate land use, but "because use and enjoyment of property is a protected interest, the municipality must provide some process before doing so." (PI Mot., Dkt. 6, at 14 n.3).

owner had a protected interest in the permits issued to her by the zoning board, even though the city then claimed they were erroneously issued). "This is because, once issued, a license or permit 'may become essential in the pursuit of a livelihood.'" *Id.* (quoting *Bell v. Burson,* 402 U.S. 535, 539 (1971)). Plaintiffs undertook the required steps to release their properties from the City's ETJ; thus, Plaintiffs necessarily must have sought some privileges or benefits from being subject only to the County's jurisdiction. Accordingly, the Court finds that Plaintiffs possess protected property interests in their real properties and in the privilege of having successfully removed their properties from the City's ETJ through S.B. 2038's automatic-release process.

Because a property interest of this kind "relate[s] to the maintenance of a person's livelihood," that interest "cannot be taken away by the [City] without due process." *Bowlby*, 681 F.3d at 220 (citing *Bell*, 402 U.S. at 539). "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). The Supreme Court has held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (quotation marks and citation omitted). In most cases, "a meaningful time" means prior to the deprivation of the liberty or property right at issue. *Zinermon*, 494 U.S. at 127.

There are "three distinct factors for a court to weigh in considering whether the procedural due process provided is adequate: 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Meza v. Livingston,* 607 F.3d 392, 402 (5th Cir. 2010) (quoting *Mathews,* 424 U.S. at 335). Plaintiffs argue that the City did not

10

afford them *any* process before depriving Plaintiffs of their protected interests; therefore, Plaintiffs contend their affected private interest was substantial; the risk of erroneous deprivation was high; and the government's interest was low. (PI Mot., Dkt. 6, at 16). The City does not contend with the *Mathews* factors in its Response to Plaintiffs' PI Motion. (Resp., Dkt. 11, at 13). Rather, the City explains how the Legislature "did not create a right to appeal a municipality's determination that a property is ineligible for release." (*Id.* at 17).

Applying the *Mathews* analysis here, the Court finds that the private interest affected by the City's action was Plaintiffs' ability to operate their businesses and religious operations outside of the City's ETJ and to generally enjoy and use their properties as they wish. Courts have recognized this kind of private interest as an important right. *See Bell,* 402 U.S. at 539. Next, the Court finds that the City did not provide any process prior to issuing the March Letters, which deemed the releases of Plaintiffs' properties "void" and announced that the properties were back within the City's ETJ and under its regulatory control. (Gervasi Decl., Dkt. 6-1, at 4; Brady Decl., Dkt. 10, at 54–55). The City's complete lack of process "increases the risk of an erroneous deprivation, and means that any procedural safeguards would be highly valuable." *Bowlby*, 681 F.3d at 221. And while the Court has already noted that the City does have a reasonable interest in regulating land use, the Court does not find that providing some sort of pre-deprivation procedure would be overly burdensome on the City. The *Mathews* balancing test "permits varied types of hearings, from informal to more formal evidentiary hearings." *Ecee, Inc. v. FERC,* 645 F.2d 339, 352 (5th Cir. 1981). Due process "demands more than no hearing at all." *Bowlby*, 681 F.3d at 221. Accordingly, the Court finds that Plaintiffs are likely to succeed on the merits of their procedural due process violation claim, as the *Mathews* analysis applied here suggests the City did not provide Plaintiffs with adequate process when depriving them of their protected property interests.

### b. The City's Alleged *Ultra Vires* Acts

To state an *ultra vires* claim, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). A government official acts *ultra vires* "if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hou. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). Ministerial acts are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015).

"Under the Texas Constitution, home-rule cities such as Austin 'have all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter.'" *United Motorcoach Ass'n, Inc. v. City of Austin*, 851 F.3d 489, 493 n.2 (5th Cir. 2017) (quoting *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433 n.6 (Tex. 2016)). *See Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998) (noting that home-rule cities possess all powers of the state that are "not inconsistent" with "the Constitution, the general laws, or the city's charter," except where limited by statute)).

Plaintiffs argue that Texas law does not authorize a municipality to void a completed ETJ release and, therefore, the City acted without legal authority in voiding the releases of Plaintiffs' properties. (PI Mot., Dkt. 6, at 17). To support this argument, Plaintiffs describe how "[n]othing in Chapter 42 authorizes a municipality to reconsider, revisit, rescind, or void a completed release." (*Id.*). Indeed, the City does not identify a statute, ordinance, or provision in its charter authorizing it to reassert jurisdiction it relinquished. Rather, the City purports that under Texas law, an action that is taken contrary to statutory limits on ETJ and annexation powers—i.e., the issuance of the original letters releasing the Plaintiffs' properties from the City's ETJ—is void *ab initio*, rather than voidable.

(*Id.* at 18). The City further asserts that its March Letters did not "'re-annex' anything; they simply recognized statutory ineligibility and corrected an administrative error to align City practice with state law." (*Id.* at 19–20). Therefore, the City argues that issuing the March Letters constituted "a ministerial function with no discretion" and that "Plaintiffs' contrary theory would invert *ultra vires* doctrine by using it to force the City to continue treating ineligible property as eligible—i.e., to act beyond its lawful authority." (*Id.* at 20).

Plaintiffs counter that the Military Base Exception does not prohibit a municipality from releasing a property that falls within the exception—it just makes the right to *automatic* release unavailable to the excepted properties. (PI Mot., Dkt. 6, at 18). Therefore, Plaintiffs contend that the City *did* have the power to release Plaintiffs' land, irrespective of the Military Base Exception, and it used that power, reaffirming that its action void*able* rather than void. (*Id.* at 18). Plaintiffs purport that under Texas law, a voidable decision regarding a municipality's jurisdiction can only be challenged through a quo warranto proceeding brought by the state. (*Id.* at 19). Accordingly, Plaintiffs argue that the City's actions are *ultra vires* "twice over: nothing in Chapter 42 or the City's charter empowered the City to rescind a completed release, and the authority to undo a voidable territorial-jurisdiction determination lies with the State—not with the City." (*Id.*).

The Court finds that Plaintiffs are likely to succeed on the merits of their *ultra vires* claim. At the hearing on Plaintiffs' PI Motion, the City conceded that while it deems Plaintiffs' properties as ineligible from S.B. 2038's automatic-release process because of the Military Base Exception, it does recognize that the properties could have been released under the law, just not automatically. (Hearing Tr. 20:15–21:3).[6] Section 42.101(1), the Military Base Exception, does not state that properties located within five miles of a military base are ineligible for release; it just states that the

---

[6] The parties agree that under Section 42.023, the governing body of the City may give its "written consent by ordinance of resolution" to reduce the ETJ of the municipality, except in specifically delineated cases. Tex. Loc. Gov't Code 42.023. (*See* PI Mot., Dkt. 6, at 18; Hearing Tr. 20:15–21:3; Resp., Dkt. 10, at 6).

automatic-release process does not apply to properties subject to the exception. Tex. Loc. Gov't Code § 42.101(1). (PI Mot., Dkt. 6, at 18). Accordingly, the Court agrees with Plaintiffs that the City's original release letters for Plaintiffs' properties were void*able* rather than void. *See MC Trilogy Tex., LLC v. City of Heath*, 662 F. Supp. 3d 690, 700 (N.D. Tex. 2023) (distinguishing between void and voidable actions).

The Court remains unconvinced by the illogical nature of the City's argument that both seeks to establish that it had no discretion to investigate whether the automatic-release process applied to the 170 properties but also that it is now properly investigating whether those petitions are valid. Indeed, the City appeared to suggest at the hearing that it would *now* check whether a property was located within five miles of the Bee Cave Armory if it received an automatic-release petition in the future, while still maintaining that S.B. 2038 gives the City no discretion as part of the automatic-release process—which the Court finds to be a nonsensical proposition. (Hearing Tr. 32:18–34:4; 23:20–25:1; Resp., Dkt. 10, at 19 ("As [S.B. 2038] makes perfectly clear, no duty exists for a municipality to make threshold eligibility decisions."). For these reasons, the Court concludes that the City likely acted *ultra vires* by rescinding the completed releases and reasserting its ETJ authority over the released properties.

### 2. Irreparable Harm

To establish irreparable harm to support a preliminary injunction, a party must demonstrate a "significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986). "To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable." *Id.* Instead, plaintiffs need only show they are "likely to suffer irreparable harm in the absence of preliminary relief." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (citation omitted).

First, Plaintiffs allege that they have been and continue to be deprived of procedural due process, "which is itself an irreparable harm that demands relief." (PI Mot., Dkt. 6, at 20). Indeed, the Fifth Circuit has held that "the loss of constitutional freedoms 'for even minimal periods of time[,] unquestionably constitutes irreparable injury.'" *BST Holdings, L.L.C. v. Occupational Safety & Health Admin*, 17 F.4th 604, 618 (5th Cir. 2021) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Further, Plaintiffs allege that because the City is currently issuing violation notices against properties it deems noncompliant with its ETJ regulations, Plaintiffs are "at imminent risk" of receiving those notices and potential enforcement action. (PI Mot., Dkt. 6, at 20). Plaintiffs also allege that they are halting certain development projects, activities, and property transactions that they have already invested substantial resources in due to the risk of enforcement. (*Id.*). Thus, Plaintiffs contend that the City's actions threaten the very existence of their businesses and in Schoenstatt's case, the exercise of their religious mission—injuries which cannot be remedied by monetary damages. (*Id.*).

The City does not respond to Plaintiffs' allegations of irreparable harm. Nonetheless, the Court finds that Plaintiffs have met their burden of demonstrating imminent, irreparable injuries that cannot be adequately repaired by money damages. *See Humana*, 804 F.2d at 1394. "[F]inancial losses have been categorized as irreparable injury where no adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, or where the loss threatens the very existence of the movant's business." *Ryan LLC v. Fed. Trade Comm'n*, 739 F. Supp. 3d 496, 517 (N.D. Tex. 2024) (citing *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016) (internal citations and quotation marks omitted). *See Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) (concluding that economic costs may constitute irreparable harm); *Wages & White Lion Invs., L.L.C. v. U.S. Food & Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021) (finding irreparable injury where the movant's alleged financial injury threatened the very existence of its business, even assuming the financial costs were recoverable). Here, Plaintiffs have alleged similar imminent,

15

irreparable injuries to their businesses and properties, alongside their alleged loss of the constitutional protection of procedural due process, *see BST Holdings*, 17 F.4th at 618.

### 3. Balance of Equities & Public Interest

The third and fourth factors for granting a preliminary injunction—the balance of the equities and the public interest, respectively—merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs argue that the Fifth Circuit has recognized "it is always in the public interest to prevent the violation of a party's constitutional rights," *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014), and that the City faces "no cognizable harm from being held to the releases it granted" because it "collects no taxes from and provides no services to these extraterritorial properties, and it has no legitimate interest in exercising jurisdiction it relinquished." (PI Mot., Dkt. 6, at 21). Whereas, by contrast, Plaintiffs face "accelerating harm to their properties, projects, transactions, businesses, and constitutional rights." (*Id.*).

The City argues that because property owners in the City's ETJ are subject to off-premises sign regulations, water quality regulations, and certain subdivision regulations, the City has a substantial interest in regulating properties within its ETJ and thereby serving the public by "protecting Austin's drinking water supply" and "reducing pollutant loading and erosion." (Resp., Dkt. 10, at 22 (citing generally Lilly Decl., Dkt. 10, at 82–84)). The City specifically points to its watershed regulations which protect sensitive, critical bodies of water in Austin—the Edwards Aquifer and Barton Springs. (*Id.*). The City contends that enjoining the City's authority to exert its ETJ over these properties "would risk irreversible environmental harm and increased treatment burdens to the public." (*Id.*).

The Court finds these factors weigh in favor of Plaintiffs. First, granting the preliminary injunction serves the public interest by maintaining the status quo and preventing the violation of

Plaintiffs' procedural due process rights. *See Jackson Women's Health*, 760 F.3d at 458 n.9. *See also Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) ("The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits."). Further, even if the City raises valid concerns about protecting the public's water resources, the City does not have a valid interest in committing unconstitutional and likely unauthorized conduct. The Court finds that Plaintiffs' "accelerating harm to their properties, projections, transactions, businesses, and constitutional rights" weighs in favor of warranting a preliminary injunction. (PI Mot., Dkt. 6, at 21).

## IV. CONCLUSION

For these reasons, the Court finds Plaintiffs have met their burden to show that the City's actions warrant a preliminary injunction enjoining the City from enforcing its March Letters during the pendency of this action. **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction, (Dkt. 6), is **GRANTED**.

**IT IS FURTHER ORDERED** that the City, and its officers, agents, servants, employees, and attorneys are **ENJOINED**, pending final judgment in this action, from enforcing its March 2026 retraction of its prior releases of properties from the City's ETJ based on the properties' proximity to the Bee Caves Armory.

**SIGNED** on August 4, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

17